

ORIGINAL

1  Regan Furcolo, Esq. (SBN 162956)
   WALSH & FURCOLO LLP
2  Symphony Towers
   750 B Street, Suite 2740
3  San Diego, CA 92101-8129
   Telephone: (619) 232-8486
4  Facsimile: (619) 232-2691

5

6  Attorneys for Plaintiff AMERICAN PROTECTION INSURANCE COMPANY

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10 AMERICAN PROTECTION INSURANCE          CASE NO.
   COMPANY,
11                                         '08 CV 0662 JM POR
                                           COMPLAINT FOR DECLARATORY
12          Plaintiff,                     JUDGMENT

13     vs.

14 OTAY WATER DISTRICT,

15          Defendant.

16        Plaintiff, American Protection Insurance Company ("APIC"), by and through its

17 undersigned counsel, and for its Complaint for Declaratory Judgment pursuant to 28 U.S.C.A. §

18 1332, states as follows:

19                              **NATURE OF DISPUTE**

20

21        1.     This is an insurance coverage action involving a general liability policy issued by

22 APIC to the Otay Water District (the "District" or "Defendant"). In April 2003, an employment

23 discrimination lawsuit was filed against the District and its Board of Directors by Pamela Aubrey

24 ("Aubrey"). APIC did not receive notice of the lawsuit until June 2007, more than four years

25 after the suit was filed and two years after the suit was settled. APIC seeks a declaration that it

26 owes no coverage for the Aubrey lawsuit, including a request to be reimbursed more than

27

28

WALSH & FURCOLO LLP
SYMPHONY TOWERS
750 B STREET
SUITE 2740
SAN DIEGO, CALIFORNIA
92101-8129
TELEPHONE (619) 232-8486

                              1
              COMPLAINT FOR DECLARATORY JUDGMENT

$483,000 in defense costs in the Aubrey suit, based, in part, on the District's failure to provide timely notice of the lawsuit in accordance with the plain terms of the APIC Policy.

## THE PARTIES

2.    Plaintiff APIC is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Illinois.

3.    Upon information and belief, the Defendant District is a publicly owned water and sewer service located in Spring Valley, California, and services a water district in the southern portion of San Diego County.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 based upon diversity of citizenship between the plaintiff and defendant.

5.    The matter in controversy in this cause exceeds $75,000.

6.    Venue is proper in this matter because events giving rise to the allegations asserted by the claims referenced herein occurred in this judicial district and the defendants are subject to the personal jurisdiction of this Court. 28 U.S.C.A. § 1391.

## THE POLICY

7.    American Protection Insurance Company issued Policy No. 3QX 113478 00 to the Otay Water District effective June 1, 2000 to June 1, 2003 (the "Policy"). A true and correct copy of the Policy is attached hereto and incorporated by reference herein as Exhibit 1. The Policy provides, in pertinent part, as follows:

> 3.    You and any other involved Insured must:
>
> a.    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> b.    Authorize us to obtain records and other information;

WALSH & FURCOLO LLP
SYMPHONY TOWERS
750 B STREET
SUITE 2740
SAN DIEGO, CALIFORNIA
92101-8129
TELEPHONE (619) 232-8486

COMPLAINT FOR DECLARATORY JUDGMENT

       c.     Cooperate with us in the investigation, settlement or defense of the claim or "suit" . . .

See Exhibit 1.

    8.    The Policy also provides:

> No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

See Exhibit 1.

## THE AUBREY LAWSUIT

    9.    On or about April 22, 2003, Aubrey filed a lawsuit in the Superior Court of the State of California, in an action styled *Pamela Aubrey v. Otay Water District*, San Diego Superior Court Case No. GIE 017207 (the "Aubrey Suit"). The lawsuit alleged claims of discrimination, harassment and retaliation.

    10.    In September 2005, a settlement was reached in the Aubrey Suit.

    11.    Upon information and belief, the case was settled for $50,000 plus costs of suit.

    12.    While the Aubrey Suit was pending, the District never advised APIC of the litigation.

    13.    APIC's first notice of the Aubrey Suit was in June 2007, almost two years after the lawsuit was settled, and two years after the suit was settled and dismissed. A true and correct copy of the letter advising APIC of the Aubrey Suit for the first time is attached hereto and incorporated by reference herein as Exhibit 2.

    14.    Upon information and belief, the District incurred $483,241 in attorney's fees and costs defending the claims asserted in the Aubrey Suit.

    15.    The District has requested that APIC pay all of the attorney's fees and costs incurred by the District in defending the Aubrey Suit, despite the fact that the District never

WALSH & FURCOLO LLP
SYMPHONY TOWERS
750 B STREET
SUITE 2740
SAN DIEGO, CALIFORNIA
92101-8129
TELEPHONE (619) 232-8486

COMPLAINT FOR DECLARATORY JUDGMENT

1    advised APIC of the Aubrey Suit until two years after the case had been settled and dismissed.

2    See Exhibit 2.

3                                       **COUNT I**

4                                **Declaratory Judgment**

5                    **No Coverage Based On Breach of Notice Provision**

6        16.    APIC hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 -

7    15 of this Complaint.

8        17.    The APIC Policy requires insureds, such as the District, to immediately send

9    APIC copies of all demands, notices, summonses or legal papers received in connection with a

10    claim or suit.  See Exhibit 1.

11        18.    Although the Aubrey suit was filed in April 2003, Kemper's first notice of the suit

12    was in June 2007, more than four years after the lawsuit was filed and two years after the suit

13    was settled and dismissed.  See Exhibit 2.

14        19.    The more than four year delay in providing notice to Kemper of the Aubrey suit

15    constitutes a clear violation of the notice provision found in the APIC Policy.

16        20.    The more than four year delay in providing notice to Kemper of the Aubrey suit

17    prejudiced Kemper's right to participate in the defense and settlement of the Aubrey suit,

18    especially since APIC's first notice of the suit was almost two years after a settlement was

19    reached in the case.

20        21.    The APIC Policy provides no coverage for the Aubrey Suit because the District

21    failed to comply with the clear and unambiguous notice provision in the Policy regarding the

22    Aubrey Suit, which clearly prejudiced APIC's right to participate in the defense and settlement

23    of the Aubrey Suit.

24    ///

25    ///

WALSH & FURCOLO LLP
SYMPHONY TOWERS
750 B STREET
SUITE 2740
SAN DIEGO, CALIFORNIA
92101-8129
TELEPHONE (619) 232-8486

4

COMPLAINT FOR DECLARATORY JUDGMENT

**COUNT II**

**Declaratory Judgment**

**No Coverage Based on Voluntary Payments Provision**

22.    APIC hereby incorporates by reference, as if set forth fully herein, Paragraphs 1 - 21 of this Complaint.

23.    The APIC Policy provides, in pertinent part, as follows:

> No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

24.    Upon information and belief, the District incurred $483,241 in attorney's fees and costs defending the claims asserted in the Aubrey Suit.

25.    The attorney's fees and costs incurred by the District in defending the claims asserted in the Aubrey Suit were voluntarily incurred by the District without the consent of APIC.

26.    The voluntary payments provision in the Policy precludes recovery of the fees voluntarily incurred by the District in the Aubrey suit without the prior consent of APIC.

27.    The APIC Policy provides no coverage for the fees voluntarily incurred by the District in the Aubrey suit because they were incurred without the prior consent of APIC in violation of the APIC Policy.

**RELIEF SOUGHT**

28.    For the reasons set forth above, Plaintiff, American Protection Insurance Company, prays that this Honorable Court enter judgment in favor of APIC for the reasons set forth herein, and that the Court make the following findings of law:

> (a)    That the APIC Policy provides that the District must immediately send APIC copies of all demands, notices, summonses or legal papers received in connection with a claim or suit;

WALSH & FURCOLO LLP
SYMPHONY TOWERS
750 B STREET
SUITE 2740
SAN DIEGO, CALIFORNIA
92101-8129
TELEPHONE (619) 232-8486

5

(b)  That the District was required to immediately send APIC copies of all demands, notices, summonses or legal papers received in connection with the Aubrey Suit;

(c)  That the District's more than four year delay in providing APIC with a copy of the legal papers filed in the Aubrey Suit was a clear violation of the APIC Policy;

(d)  That the District's more than four year delay in providing APIC with notice of the Aubrey Suit prejudiced APIC's right to participate in the defense and settlement of the Aubrey Suit;

(e)  That the District's failure to provide notice of the Aubrey Suit until two years after the suit was settled prejudiced APIC's right to participate in the defense and settlement of the Aubrey Suit;

(f)  That the APIC Policy provides that no Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without APIC's consent;

(g)  That the attorneys fees and costs incurred by the District with regard to the Aubrey Suit were voluntarily incurred without APIC's consent;

(h)  That the APIC Policy provides no coverage for the attorneys fees and costs incurred by the District with regard to the Aubrey Suit because they were voluntarily incurred without APIC's consent in violation of the APIC Policy; and

for any other further relief that this Honorable Court deems just and fair.


Respectfully submitted,

AMERICAN PROTECTION INSURANCE CO.

DATED: April 11, 2008          BY:_____
                                    Regan Furcolo, Esq.
                                    Attorney for Plaintiff AMERICAN
                                    PROTECTION INSURANCE COMPANY

WALSH & FURCOLO LLP
SYMPHONY TOWERS
750 B STREET
SUITE 2740
SAN DIEGO, CALIFORNIA
92101-8129
TELEPHONE (619) 232-8486

6

COMPLAINT FOR DECLARATORY JUDGMENT

BLUEBIRD OFFICE SUPPLIES
(888) 477-0700
www.bluebirdonline.com

**EXHIBIT 1**



**KEMPER.**
American Protection Insurance Company

Administrative Office:

7501 E. McCormick Parkway, 200 North
Scottsdale, AZ 85258

## CALIFORNIA RURAL SPECIAL DISTRICTS INSURANCE PROGRAM
## COMMON POLICY DECLARATIONS

Policy No.  3QX 113478 00
Replacement No.  New

**NAMED INSURED AND MAILING ADDRESS:**
Otay Water District
10595 Jamacha Road
Spring Valley CA 92078

city 0370

**AGENT NAME AND ADDRESS:**
S. N. Potter Insurance Agency, Inc.
P. O. Box 7187
Stockton CA 95267

**AGENT NO.:**   430103

GARY KELLEY ✓

NOV 2 0 2000

**POLICY PERIOD:**   From  06/01/2000          To  06/01/2003
at 12:01 a.m. Standard Time at your mailing address shown above.

**TYPE OF DISTRICT:**   ☒ Water District   ☐ Emergency Services District   ☐ Cemetery District
☐ Other:

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following Coverage Parts for which a premium is indicated.  This premium may be subject to adjustment.

P 370
6 004
A 041
Q 009
B 093
PC 4/9

| | PREMIUM |
|---|---|
| Property and Inland Marine Coverage Part | $ INCL. |
| Liability Coverage Part | $ INCL. |
| Crime Coverage Part | $ INCL. |
| | $ |
| | $ |
| | $ |
| | $ |

| TOTAL PREMIUM | | |
|---|---|---|
| | First Year | $ 125,700 |
| | Second Year | $ TBD |
| | Third Year | $ TBD |

**FORMS APPLICABLE TO ALL COVERAGE PARTS:** CARSDI 1004  8/99; CARSDI 1103  8/99

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART SUPPLEMENTAL DECLARATIONS, COVERAGE PARTS, FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

COUNTERSIGNED _____          by_____
              DATE                                      AUTHORIZED REPRESENTATIVE

CARSDI 1000 (8/99)
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

Exhibit 1



*M004*   X

ENDORSEMENT NO. __4__

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (Standard Time) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| 3QX 113478 00 | 06 | 01 | 2001 | A.M. X | | Otay Water District | 430103 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Policy is extended from 06/01/2001 to 07/01/2001**

**Additional Premium Charged: $10,475**

STACY BROWN

MAY 2 4 2002

*1.083*

*EXP = 1014*

*105,700*

*136,175*

*86,804 - 40*

*9409,165*

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

JUN 1 2 2001

_____
AUTHORIZED REPRESENTATIVE

_____
DATE

CARSDI 1214 (8/99)


Insurance Companies

ENDORSEMENT NO. ___3___

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (Standard Time) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| 3QX 113478 00 | 06 | 01 | 2001 | X | | Otay Water District | 430103 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Policy is non-renewed due to a Material Adverse Change in Liability Exposure.**

GARY KELLEY

JAN 1 4 2002

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

_____Paul R. Fuller_____
AUTHORIZED REPRESENTATIVE

JUN 1 2 2001
DATE

CARSDI 1214 (8/99)

ENDORSEMENT NO.    2

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (Standard Time) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| 3QX 113478 00 | 12 | 28 | 2000 | A.M. x | | Otay Water District | 430103 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:
**LIABILITY COVERAGE PART**

### SCHEDULE

**Name of Person or Organization:**
SDG&E
As respects use of easement.

KELLIE TRAVIS

JAN 0 9 2001

SECTION IV -- WHO IS AN INSURED is amended to include as an Insured the person or organization shown in the Schedule as an Insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

_____
AUTHORIZED REPRESENTATIVE

DEC 2 8 2000
DATE

CARSDI 1206 (8/99)

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984

ENDORSEMENT NO. ____1____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (Standard Time) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| 3QX 113478 00 | 06 | 01 | 2000 | X | | Otay Water District | 430103 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:
**LIABILITY COVERAGE PART**

### SCHEDULE

**Name of Person or Organization:**
Price, Troncone & Associates
701 "B" Street Suite 1400
San Diego CA 92101

KELLIE TRAVIS

DEC 1 9 2000

SECTION IV -- WHO IS AN INSURED is amended to include as an Insured the person or organization shown in the Schedule as an Insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

_____
AUTHORIZED REPRESENTATIVE

DEC 0 4 2000
_____
DATE

CARSDI 1206 (8/99)

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984

## CALIFORNIA RURAL SPECIAL DISTRICTS INSURANCE PROGRAM
## PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number   3QX 113478 00

### SCHEDULE OF COVERAGES AND LIMITS OF INSURANCE

| Policy Limit of Insurance | $100,000,000 Per Occurrence |
|---|---|

| Deductibles | $1,000  Per Occurrence |
|---|---|
| | $25  Per Horsepower/Boiler & Machinery Per Occurrence |
| | $1,000  Per Occurrence Auto Comprehensive and Collision |

| Covered Property | Limit of Insurance |
|---|---|
| Aboveground Piping | Included in Policy Limit |
| Above and Belowground Penstock | Included in Policy Limit |
| Commandeered Property | Included in Policy Limit |
| Communication Equipment | Included in Policy Limit |
| Computer Equipment and Electronic Media | Included in Policy Limit |
| Emergency Service Portable Equipment | Included in Policy Limit |
| Fine Arts | Included in Policy Limit |
| Mobile Equipment (Owned) | Included in Policy Limit |
| Mobile Equipment (Non-owned) | Included in Policy Limit |
| Outdoor Property Including Signs | Included in Policy Limit |
| Paved Surfaces | Included in Policy Limit |
| Property In the Course of Construction | Included in Policy Limit |
| Real and Personal Property (Owned) | Included in Policy Limit |
| Real and Personal Property (Of Others) | Included in Policy Limit |
| Automobiles (Owned) | Included in Policy Limit |
| Automobiles (Rented or Borrowed) | Included in Policy Limit |
| Trees, Shrubs, and Landscape Plantings | $50,000 Per Occurrence |

| Coverage Extensions | Limit of Insurance |
|---|---|
| Accounts Receivable | Included in Policy Limit |
| Ammonia Contamination | Included in Policy Limit |
| Arson and Crime Reward | $10,000 Per Occurrence |
| Automobile Glass Repair and Replacement | Included in Policy Limit |
| Debris Removal | Included in Policy Limit |
| Demolition and Increased Cost of Construction | Included in Policy Limit |
| Expediting Expenses | Included in Policy Limit |
| Extra Expense | Included in Policy Limit |
| Fire Department Service Charge | $25,000 Per Occurrence |
| Loss of Income | Included in Policy Limit |
| Personal Effects of Insureds | $50,000 Per Occurrence |
| Personal Effects of Patients and Fire Victims | $50,000 Per Occurrence |
| Personal Automobiles of Insureds | Included in Policy Limit |
| Pollutant Clean Up and Removal | $250,000 Per Occurrence |
| Preservation of Property | Included in Policy Limit |
| Recertification of Equipment and Automobiles | $50,000 Per Occurrence |
| Rental Value | Included in Policy Limit |
| Towing and Transportation Expenses | $5,000 Per Occurrence |
| Utility Interruption | Included in Policy Limit |
| Vacant Buildings | Included in Policy Limit |
| Valuable Papers and Records | Included in Policy Limit |

CARSDI 1001 (8/99)

**FORMS AND ENDORSEMENTS**
Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:
CARSDI 1100a  10/99; CARSDI 1217  8/99; CARSDI 1220  8/99

| Premium: | First Year | $ | INCL. |
|---|---|---|---|
| | Second Year | $ | TBD |
| | Third Year | $ | TBD |

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

CARSDI 1001 (8/99)

# CALIFORNIA RURAL SPECIAL DISTRICTS INSURANCE PROGRAM
## LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number   3QX 113478 00

### SCHEDULE OF COVERAGES AND LIMITS OF INSURANCE

Insurance is only provided for the coverages indicated by an X.

| Coverage | Limit of Insurance |
|---|---|
| ☒ Bodily Injury and Property Damage | $ 25,000,000 Per Occurrence<br>$ 50,000,000 Bodily Injury and Property Damage Aggregate |
| ☒ Personal Injury and Advertising Injury | $ 25,000,000 Any One Person or Organization<br>$ 50,000,000 Personal Injury and Advertising Injury |
| ☒ Professional Liability | $ 25,000,000 Per Claim<br>$ 50,000,000 Professional Liability Aggregate |
| ☒ Wrongful Acts | $ 25,000,000 Per Claim<br>$ 50,000,000 Wrongful Acts Aggregate |
| ☒ Fire Damage | $  1,000,000 Per Fire |
| ☐ | $ |

**RETROACTIVE DATE:** 06/01/2000

**FORMS AND ENDORSEMENTS**
Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:
CARSDI 1101  8/99; CARSDI 1202  8/99; CARSDI 1203  8/99; CARSDI 1206  8/99

Premium:     First Year      $   INCL.
             Second Year     $   TBD
             Third Year      $   TBD

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

CARSDI 1002 (8/99)

## CALIFORNIA RURAL SPECIAL DISTRICTS INSURANCE PROGRAM
## CRIME COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number   3QX 113478 00

### SCHEDULE OF COVERAGES, LIMITS OF INSURANCE AND DEDUCTIBLES

Insurance is only provided for the coverages indicated by an X.

| Coverage | Limit of Insurance | Deductible |
|---|---|---|
| ☒ Employee Dishonesty Coverage | $500,000 | $1,000 |
| ☒ Forgery or Alteration Coverage | $500,000 | $1,000 |
| ☒ Theft, Disappearance and Destruction Coverage | | |
| Inside | $ 25,000 | $1,000 |
| Outside | $ 25,000 | $1,000 |
| ☒ Computer Fraud Coverage | $100,000 | $1,000 |
| ☐ | $ | $ |

**CANCELLATION OF PRIOR INSURANCE:** By acceptance of this Coverage Part you give us notice cancelling Prior policy or bond numbers   N/A
the cancellation to be effective at the time this Coverage Part becomes effective.

**FORMS AND ENDORSEMENTS**
Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:
CARSDI 1102  8/99

|  | Premium: | First Year | $ | INCL. |
|---|---|---|---|---|
|  |  | Second Year | $ | TBD |
|  |  | Third Year | $ | TBD |

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

CARSDI 1003 (8/99)

## Automobile Schedule – Property Coverage

| Automobile Description | Vehicle Identification Number (VIN) | Covered | | Deductible |
|---|---|---|---|---|
| | | Yes | No | |
| 1995 Ford F47 | 1FDLF47G2SEA22962 | X | | $1000 |
| 1995 Ford F800 | 1FDXF80E1SVA47305 | X | | $1000 |
| 1985 F-L T9000 DT | 1FDYU90WXFVA23079 | X | | $1000 |
| 1993 Ford F800 | 1FDXK84AXPVA09159 | X | | $1000 |
| 1993 Ford F800 | 1FDXK84AXPVA09467 | X | | $1000 |
| F800 Dump Boy | | X | | $1000 |
| 1993 Ford F800 | 1FDXK84E1PVA23857 | X | | $1000 |
| 1993 Ford Ranger | 1FTCR14X9PTA52901 | X | | $1000 |
| 1989 Pontiac | 1G2HZ54C9KW259360 | X | | $1000 |
| 1991 Ford Truck F800 | 1FDXK84AXMVA14292 | X | | $1000 |
| 1994 F800 | 1FDXK84EXRVA03030 | X | | $1000 |
| 1995 Ford Ranger | 1FTCR14XXSPA2039 | X | | $1000 |
| 1990 Ford Bronco II | 1FMCU14T3LUA30842 | X | | $1000 |
| 1995 Ford Ranger | 1FTCR14X8SPA02041 | X | | $1000 |
| 1993 Ford F450 | 2FDLF47G7PCA55923 | X | | $1000 |
| 1993 Utility body | | X | | $1000 |
| 1995 Ford Ranger | 1FTJE34GOSHA71640 | X | | $1000 |
| 1997 Ford Ranger P/U | 1FTCR10T5HUA93914 | X | | $1000 |
| 1994 3/4 Ton | 1FTHF25GORNA03290 | X | | $1000 |
| 1990 Ford Ranger | 1FTCR10T4LUA54367 | X | | $1000 |
| 1987 2100 Gal Fuel Truck | 1GBJ7D1B2HY109859 | X | | $1000 |
| 1995 Ford Ranger | 1FTCR14X6SPA02040 | X | | $1000 |
| 1988 Ford Ranger | 1FTCR10TBJUA9930B | X | | $1000 |
| Ford F250 White | 1FTHF25G2JPA56209 | X | | $1000 |
| 1988 Ford E250 | 1FTFE24N5JHA52742 | X | | $1000 |
| 1993 Ford 4x4 | 1FTDR15X7PPB62826 | X | | $1000 |
| 1991 Ford Aerostar | 1FMDA31XMZA35328 | X | | $1000 |
| 1988 Ford F-Super Dump Truck | 2FDLF47G6JCA84739 | X | | $1000 |
| 1988 Ford Ranger | 1FTCR10TXJUC96559 | X | | $1000 |
| 1989 Ford 4X4 F250 | 1FTHF26GXKKA56956 | X | | $1000 |
| 1994 Ford LT9000 | 1FDYU90L4RVA25176 | X | | $1000 |
| 1991 Ford Truck | 2FTHF25G8MCA19560 | X | | $1000 |
| 1995 Ford F250 2wheel Drive | 2FTHF25GSSCA24339 | X | | $1000 |
| 1990 Ford Ranger | 1FTCR10AXLUB95099 | X | | $1000 |
| 1994 Ford Ranger | 1FTCR14XXRPA45337 | X | | $1000 |
| 1994 Ford Ranger | 1FTCR14X8RPA45336 | X | | $1000 |
| 1994 Ford XL Supercab | 1FTCR14X4RPB48740 | X | | $1000 |
| 1990 Ford Ranger | 1FTCR10AXLUC13004 | X | | $1000 |
| 1990 Ford Ranger | 1FTCR10A9LUC12975 | X | | $1000 |
| 1984 Ford Cab-Chassis | 1FDJF3767EPB28881 | X | | $1000 |
| 1992 Ford Ranger | 1FTCR10X5NUA9811 | X | | $1000 |
| 1992 Ford Ranger | 1FTCR14XONPA26144 | X | | $1000 |
| 1992 Ford SF345 | 2FDLF47G6NCA17466 | X | | $1000 |
| 1992 Ford Pickup | 1FTCR10X7NUA98112 | X | | $1000 |
| 1992 Ford Supercab | 1FTHX25GXNKA29693 | X | | $1000 |
| 1992 E350 Ford Van | 1FTJE34G3NHA23800 | X | | $1000 |
| 1992 Ford Supercab | 1FTHX25G2NKA29690 | X | | $1000 |
| 1992 Ford Supercab | 1FTHX25G6NKA29692 | X | | $1000 |

## Automobile Schedule – Property Coverage

| Automobile Description | Vehicle Identification Number (VIN) | Covered | | Deductible |
|---|---|---|---|---|
| | | Yes | No | |
| 1992 Ford F800 | 1FDXK84AONVA10155 | X | | $1000 |
| 1995 Ford Bronco | 1FMEU15H2SL884580 | X | | $1000 |
| 1996 Ford Ranger | 1FTCR14X4TPA49567 | X | | $1000 |
| 1996 Ford Ranger | 1FTCR14X6TPA49568 | X | | $1000 |
| 1996 Ford F250 3/4 Ton Pickup | 1FTHF25G8TEA54494 | X | | $1000 |
| 1996 Ford F250 3/4 Ton Pickup | 1FTHF25GXTEA54495 | X | | $1000 |
| 1996 Ford F800 | 1FDXF80E8TVA24475 | X | | $1000 |
| 1996 Ford F450 | 1FDLF47G2TEB82082 | X | | $1000 |
| 1996 Ford F450 | 1FDLF47G3TEB38026 | X | | $1000 |
| 1997 Ford Ranger 4X4 | 1FTDR15X1VPA32022 | X | | $1000 |
| 1997 Ford F250 Truck | 1FTHF25H8VEA68214 | X | | $1000 |
| 1997 Ford F250 Truck | 1FTHF25H6VEA68213 | X | | $1000 |
| 1997 Ford F800 | 1FDXF80E2VVA37936 | X | | $1000 |
| 1997 Ford Aerostar Van | 1FMDA31X9VZB04139 | X | | $1000 |
| 1997 Ford Aerostar Van | 1FMDA31X2VZC23210 | X | | $1000 |
| 1998 Ford Ranger 1/2Tton Pickup | 1FTYR1448WPA63097 | X | | $1000 |
| 1998 Ford Explorer | 1FMZU34X2WZA99943 | X | | $1000 |
| 1998 Chev C3500 2/3 Yd Dump | 1GBKC34F4WF045646 | X | | $1000 |
| 1987 Chev 4X4 K2500 Ext Cab | 1GCGK29J4WE196150 | X | | $1000 |
| 1998 Chev 3/4 Ton C2500 | 1GCGC24R5WE190612 | X | | $1000 |
| 1998 Ford Diesel Truck F800 | 1FDXF80E6WVA32305 | X | | $1000 |
| 1999 F250 W/Cab | 1FTNX20L9XED68701 | X | | $1000 |
| 1999 GMC 3/4 Ton Cab Pickup | 1GDGC24RXXF047114 | X | | $1000 |
| 1999 GMC 3/4 Ton Cab Pickup | 1GDGC24RXXF048649 | X | | $1000 |
| 1999 Strg Sewer & Well Cleaner | 2FZHRJBB9XAA73370 | X | | $1000 |
| 1999 GMC C8500 Cab Chassis | 1GDP7H1C3XJ512269 | X | | $1000 |
| 1999 GMC C8500 Cab/W Dump | 1GDP7H1C1XJ512299 | X | | $1000 |
| 2000 Ford Explorer | 1FMZU73EOYZA21767 | X | | $1000 |
| 2000 Ford F250 XCab | 1FTYR14XXYPA21494 | X | | $1000 |
| 2000 Ford F250 XCab | 1FTYR14X8YPA21493 | X | | $1000 |
| 2000 Ford F250 XCab | 1FTNX20L7YE99261 | X | | $1000 |
| 2000 Ford F250 XCab | 1FTNX20L9YEA99262 | X | | $1000 |
| 2000 Ford F250 XCab | 1FTNX21SOYEB06752 | X | | $1000 |
| 1963 Zieman Trailer | Z115528 | X | | $1000 |
| 1994 Zieman Tilt Trailer | 1ZCT29AXRZP18018 | X | | $1000 |
| 1984 Eager Beaver 20TXT | 112TXT207EA200014 | X | | $1000 |
| 1990 Tilt Trailer Case Eager Beaver | 112TDV304LA034535 | X | | $1000 |
| 1991 Trail King Trailer TKT | TKU01014MM118026 | X | | $1000 |
| 1992 Callen 28" Trailer | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# Kemper.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and a Secretary, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized representative of the Company.

American Protection Insurance Company

Secretary                    President

CARSDI 1004 (8/99)

# CALIFORNIA RURAL SPECIAL DISTRICTS INSURANCE PROGRAM
## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the Common Policy Conditions.

## A. Arbitration

All disputes between any Insured and us regarding our respective rights and obligations under this policy will be resolved by binding arbitration. Either party may initiate the arbitration process by making a written demand for arbitration. When this demand is made, each party will select an arbitrator within thirty (30) days. Should any party fail to select an arbitrator, then the other party may select the second arbitrator. These two arbitrators will select the third arbitrator. If they cannot agree upon a third arbitrator within thirty (30) days, then the selection will be made by a court of jurisdiction. Each party will pay the expenses and fees of the arbitrator selected by that party and will bear half the expenses and fees of the third arbitrator.

The arbitration hearing will take place in the county in which the address shown in the Declarations for the first Named Insured is located. Local rules of law as to the procedure and evidence applicable to binding arbitration will apply. A decision agreed to by two of the arbitrators will be binding.

The arbitrators may award only the following damages:

1. Amounts payable under the policy.

2. Economic damages recoverable by law for failure to perform any contractual obligation.

3. Attorneys' and arbitrators' fees and costs to the prevailing party.

The arbitrators' award will be the sole and exclusive remedy for any claim or dispute subject to arbitration under this policy.

## B. Assistance and Cooperation of the Insured

The Insured will cooperate with us and, at our request and expense, will attend hearings and trials. The Insured will also assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting "suits".

## C. Bankruptcy or Insolvency

Bankruptcy or insolvency of the Insured or the Insured's estate will not relieve us of our obligations under this policy.

## D. Cancellation and Nonrenewal

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance notice of cancellation.

2. If this policy has been in effect for sixty (60) days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the address shown in the Declarations and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

   a. Ten (10) days before the effective date of cancellation if we cancel for:

      (1) Nonpayment of premium; or

      (2) Discovery of fraud or material misrepresentation by any Insured or his or her representative in obtaining this insurance, or by you or your representative in pursuing a claim under this policy.

   b. Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than sixty (60) days, or is a renewal of a policy we issued, we may cancel this policy only upon occurrence, after the effective date of the policy, of one or more of the following:

   a. Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

   b. Discovery of fraud or material misrepresentation by:

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission

**(1)** Any Insured or his or her representative in obtaining this insurance; or

**(2)** You or your representative in pursuing a claim under this policy.

**c.** A judgment by a court or an administrative tribunal that you have violated a California or federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**d.** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**e.** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**f.** A determination by the Commissioner of Insurance that the:

    **a.** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

    **b.** Continuation of the policy coverage would:

        **(1)** Place us in violation of California law or the laws of the state where we are domiciled; or

        **(2)** Threaten our solvency.

**g.** A change by you or your representative in the activities or property of commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**4.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the Declarations, and to the producer of record, at least:

**a.** Ten (10) days before the effective date of cancellation if we cancel for a reason listed in 3.a. or 3.b.; or

**b.** Thirty (30) days before the effective date of cancellation if we cancel for any other reason listed in paragraph 3.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**7.** Subject to 8. below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least sixty (60) days, but not more than one-hundred twenty (120) days, before the expiration or anniversary date. We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the Declarations.

**8.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

**b.** If the policy has been extended for ninety (90) days or less, provided that notice has been given in accordance with 7. above.

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within sixty (60) days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than sixty (60) days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within sixty (60) days of the end of the policy period.

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission

f.  If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in 7. above, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

9.  If notice is mailed, proof of mailing will be sufficient proof of notice.

## E. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## F. Duties In the Event of Occurrence, Offense, Claim or Suit

1.  An insured has certain duties if a claim or "suit" is brought against it, or in the event of an "occurrence", accident or "wrongful act" that may result in claim under this policy.

2.  Regardless of perceived liability, an insured must see to it that we are notified as soon as practicable of an "occurrence", accident or "wrongful act" that may result in a claim. To the extent possible, notice should include:

    a.  How, when and where the "occurrence", accident or "wrongful act" took place;

    b.  The names and addresses of any injured persons and witnesses; and

    c.  The nature and location of any injury or damage arising out of the "occurrence", accident or "wrongful act".

2.  If a claim is made or "suit" is brought against any insured you must:

    a.  Immediately record the specifics of the claim or "suit" and the date received;

    b.  Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

3.  You and any other involved insured must:

    a.  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

b.  Authorize us to obtain records and other information;

c.  Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

d.  Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this policy may also apply.

4.  No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## G. Examination of Your Books and Records

We may, but are not obligated to, examine and audit your books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

## H. Inspections and Surveys

We have the right but are not obligated to:

1.  Make inspections and surveys at any time;

2.  Give you reports on the conditions we find; and

3.  Recommend changes.

Any inspection, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1.  Are safe or healthful; or

2.  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## I. Legal Action Against Us

No person or organization has a right under this policy to join us as a party or otherwise bring us into a "suit" asking for damages from an insured or to sue us on this policy unless all of its terms have been fully complied with. A person or organization may sue us to recover on an agreed

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission

settlement or on a final judgment against an insured obtained after actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance.    An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

## J. Liberalization

If we are required by statute to adopt any revision that would broaden the coverage under this policy without additional premium within forty-five (45) days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

## K. Multiple Year Policies

The following provisions apply for any policy written for more than one (1) annual period:

1. The premium shown in the Declarations is a deposit premium for the first anniversary and was computed based on rates and rules in effect at the time the policy was issued. Such rates and rules will be used to calculate the premium at each subsequent anniversary, for the entire term of the policy.

2. The Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations.

## L. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## M. Separation of Insureds

Any rights or duties specifically assigned in the policy to the first Named Insured applies

1. As if each Named Insured were the only Named Insured; and

2. Separately to each Insured against whom claim is made or suit is brought.

It is understood that the separation of insureds will not increase the Limits of Insurance.

## N. Statutory Provisions

Terms of this policy which conflict with state statutes are amended to conform to such statutes.

## O. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but  only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## P. Transfer of Rights of Recovery Against Others to Us

If the Insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The Insured must do nothing after the loss to impair them. At our request, the Insured will bring suit or transfer those rights to us and help us enforce them.

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission

# CALIFORNIA RURAL SPECIAL DISTRICTS INSURANCE PROGRAM
# PROPERTY COVERAGE PART

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" and "Named Insured" refer to the entity identified as the "Named Insured" in the Declarations. The words "Insured" or "Insureds" refer to any person or organization qualifying as an "Insured" under SECTION II. WHO IS AN INSURED. The words "we", "us", "our" and "Company" refer to the Company stated in the Declarations as providing this insurance.

Other words and phrases that appear in quotation marks have special meanings. Refer to SECTION X. DEFINITIONS and other provisions of this policy for such meanings.

All Coverage Parts included in this policy are subject to the Common Policy Conditions.

## SECTION I -- INSURING AGREEMENT

We will pay for direct physical loss of or damage to Covered Property caused by or resulting from any Covered Cause of Loss.

## SECTION II -- WHO IS AN INSURED

Each of the following is an Insured to the extent set forth below:

A. The Named Insured shown in the Declarations and all affiliated, associated, or subsidiary organizations;

B. Any individual or entity under the management or operating control of any of the organizations designated in paragraph A.; and

C. Lessors, mortgagors, and other parties having an interest in buildings, fixed equipment, mobile equipment, "automobiles", personal property or rental income of any of the entities designated in A. and B. above but only for their respective rights and interests.

## SECTION III -- COVERED PROPERTY

A. Aboveground piping;

B. Aboveground and belowground "penstock";

C. "Commandeered property";

D. Communication equipment;

E. Computer equipment and electronic "media";

F. "Emergency service portable equipment";

G. "Fine arts";

H. "Mobile equipment" owned by an Insured;

I. "Mobile equipment" rented or borrowed from others for or on behalf of an Insured for which the Insured is legally responsible;

J. Outdoor property including signs;

K. Paved surfaces;

L. Property in the course of construction;

M. Real and personal property of the Insured including the Insured's interest in Improvements and betterments to buildings occupied but not owned by the Insured;

N. Real and personal property of others while in the care, custody, or control of the Insured, and for which the Insured is legally liable;

O. "Automobiles" owned by an Insured;

P. "Automobiles" rented or borrowed from others for or on behalf of an Insured for which the Insured is legally responsible;

Q. Trees, shrubs and landscape plantings; and

R. Property acquired after the inception of this policy until the next anniversary date without additional premium except that the following property will not be Covered Property unless it is reported to us within thirty (30) days of its acquisition and any premium due thereon is paid:

1. Any newly acquired single piece of property, other than "automobiles" or "mobile equipment", whose value exceeds $1,000,000.

2. Any property in the course of construction the completed value of which exceeds $1,000,000.

3. Any newly acquired "automobiles" or "mobile equipment".

The most we will pay for loss to newly acquired "automobiles" or "mobile equipment" is $1,000,000 unless such property has been reported and an appropriate premium paid thereon. Property automatically covered under this section during the remainder of the coverage period in which it was acquired will not continue to have coverage

CARSDI 1100a (10/99)                        Page 1 of 9

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

under a subsequent coverage period, unless reported to us at the policy anniversary date.

## SECTION IV -- PROPERTY NOT COVERED

This policy does not cover the following property:

A. Aircraft;

B. Dams;

C. Ditches, canals, levees, flumes, aqueducts or any other type of water or wastewater conveyance;

D. Excavations, underground flues or drains;

E. Foundations, piers or other supports which are below the undersurface of the lowest basement floor or below the surface of the ground;

F. Furs, fur garments, jewels, jewelry, watches, pearls, precious and semi-precious stones, gold, silver, platinum or other precious metals and alloys;

G. Land, atmosphere or any body of water;

H. Power transmission and feeder lines;

I. Property which is separately described and specifically covered, in whole or in part, by any other insurance policy;

J. Stamps, letters of credit, cash or tickets;

K. Standing timber, growing crops or animals;

L. Wells and underground piping except submersible pumps; and

M. Saltwater piers, docks and wharves.

## SECTION V -- COVERED CAUSES OF LOSS

Covered Causes of Loss includes all risk of direct physical loss or damage to Covered Property except as hereinafter excluded or limited. Any loss or damage caused by "earthquake" or windstorm that occurs within any period of seventy-two (72) consecutive hours shall constitute a single occurrence. The expiration of this policy will not reduce the seventy-two (72) hour period.

## SECTION VI -- EXCLUSIONS

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

A. Loss or shortage disclosed upon taking inventory or mysterious disappearance of property;

B. Rain, sleet, snow or ice to personal property in the open;

C. Weight of the load imposed on a machine exceeding the capacity for which such machine was designed;

D. "Earthquake", unless a cause of loss not otherwise excluded ensues, in which case we will pay only for such ensuing loss. This exclusion does not apply to "mobile equipment" or "automobiles";

E. Misappropriation, conversion, infidelity or any dishonest act on the part of an insured, its employees or agents, or others to whom the property may be entrusted.

F. Shrinkage, evaporation, reduction in weight, leakage, breakage of fragile articles, marring, scratching, exposure to light, or change in color, texture or flavor to personal property. This exclusion does not apply to loss or damage caused by a "specified cause of loss";

G. Nuclear reaction or radiation, or reactive contamination, however, caused. But if nuclear reaction or radiation contamination results in fire, we will pay for the loss or damage caused by that fire;

H. Moths, vermin, termites, or other insects, inherent vice, latent defect, wear, tear or gradual deterioration, contamination, rust, wet or dry rot, or the normal settling, shrinkage, or expansion of the building or foundation. This exclusion does not apply to loss or damage by a cause of loss not otherwise excluded;

I. Water below the surface of the ground, including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basements or other floors, or through doors, windows or other openings in such sidewalks, driveways, foundations, walls or floors. This exclusion does not apply to loss or damage from the overflowing or breaking of boundaries of lakes, ponds, reservoirs, rivers, streams, harbors or similar bodies of water caused by rain, snow or ice immediately derived from storm run-off.

J. Wear and tear, freezing, mechanical or electrical breakdown to "mobile equipment" and "automobiles" or blowouts, punctures or other road damage to tires thereof, unless first caused by a cause of loss not otherwise excluded;

K. Interference at the insured's premises covered under this policy with rebuilding, repairing or replacing property or with the resumption or continuation of business. This exclusion also applies to any increase in loss or damage which may be occasioned by:

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

1. The suspension, lapse or cancellation of any lease, contract or order unless such suspension, lapse or cancellation results directly from the interruption of business, and then we will only cover such loss or damage as it affects the Insured's "extra expense" covered under this policy; or

2. Loss of Income or any other consequential or remote loss or damage, unless specifically covered herein;

L. War, Including undeclared or civil war; warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

M. Defective, faulty or Inadequate:

1. Planning, zoning, development, surveying, siting, construction, building codes, ordinances or building inspections;

2. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction;

3. Materials, parts or equipment used in repair, construction, renovation, or remodeling; or

4. Maintenance;

of part or all of any Covered Property unless a cause of loss not otherwise excluded ensues, in which case we will pay only for such ensuing loss.

N. Acts or decisions, Including failure to act or decide, of any person, group, organization or governmental body, unless a cause of loss not otherwise excluded ensues, in which case we will pay only for such ensuing loss.

O. Except as provided under SECTION VIII. COVERAGE EXTENSIONS, N. Pollutant Cleanup and Removal:

1. The actual, alleged or threatened release, discharge, escape, seepage, migration or dispersal of "pollutants", whether direct or indirect, proximate or remote, sudden, accidental or gradual. This subsection 1. does not apply to loss or damage from a "specified cause of loss";

2. The enforcement, direction, or request of any civil or governmental authority regulating the testing, monitoring, prevention, control, removal, tearing down, demolition, disposal, treatment, clean-up, contamination, detoxification, neutralization or containment of "pollutants", or the restoration, construction, reconstruction or replacement of property contaminated by "pollutants"; and

3. Any fines, penalties, compensatory damages, punitive damages or any other damages, awards or settlements adjudged against the Insured by any civil or judiciary body, or board of arbitration, nor any sums which the Insured will voluntarily agree to pay to any third party, nor any legal fees or other costs of defense of legal actions, claim or proceedings and appeals arising out of or attributed to any damage or loss caused by or resulting from "pollutants".

P. Use of an "automobile" in any professional or organized racing or demolition contest or stunting activity, or practice for such contest or activity.

### SECTION VII -- LOSS PAYMENT

A. Valuation

1. Subject to the applicable Limit of Insurance, we will pay the market value, or the cost to repair if less, of "fine arts", paved surfaces and "valuable papers and records";

2. Subject to the applicable Limit of Insurance, we will pay the "replacement cost value", or the cost to repair if less, of "automobiles", "geomembrane" covers", "mobile equipment", buildings, other structures, fixed equipment, personal property, outdoor property, communication equipment, computer equipment and electronic "media", "emergency service portable equipment", "commandeered property", trees, shrubs and landscape planting. We will not pay the "replacement cost value" until the covered property is actually repaired or replaced. The Insured must repair the covered property within a reasonable period of time not to exceed two (2) years. We will pay for loss or damage on an "actual cash value" basis until the repair or replacement is completed.

3. Subject to the applicable Limit of Insurance, in case of loss or damage to any part of a machine or unit consisting of two or more parts when complete, we will pay the value of the part or parts lost or damaged. At the Insured's option, we will pay to replace or duplicate the lost or damaged part or parts, or repair the machine or units. But the option selected by the Insured shall not exceed 125% of the lowest cost of the above.

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

## B. Application of Deductible

We will not pay for loss or damage in any one occurrence until the loss or damage exceeds the deductible shown in the Declarations. All covered loss as a result of a single occurrence will be subject to one deductible. When more than one classification of property is involved in an occurrence, the applicable deductible will be the highest amount indicated in the Declarations for any classification of property involved in the occurrence.

In the event of loss or damage caused by windstorm and earthquake, a single occurrence means loss or damage occurring or commencing within a period of seventy-two (72) consecutive hours.

## SECTION VIII -- COVERAGE EXTENSIONS

Subject to the applicable Limit of Insurance, this policy also covers:

## A. Accounts Receivable

We will pay for the actual loss sustained to your "accounts receivable" from a Covered Cause of Loss not otherwise excluded.

1. When there is proof that a loss has occurred but the insured cannot accurately establish the total amount of "accounts receivable" outstanding as of the date of such loss, such amount will be based on the insured's monthly statements and will be computed as follows:

   a. Determine the amount of all outstanding "accounts receivable" at the end of the same fiscal month in the year immediately preceding the year in which the loss occurred;

   b. Calculate the percentage of increase or decrease in the average monthly total of "accounts receivable" for the twelve (12) months immediately preceding the month in which the loss occurred as compared with the average for the same months of the preceding year;

   c. The amount determined under a. above, increased or decreased by the percentage calculated under b. above, will be the total amount of "accounts receivable" as of the last day of the fiscal month in which the loss occurred;

   d. The amount determined under c. above will be increased or decreased in conformity with the normal fluctuations in the amount of "accounts receivable" during the fiscal month involved, due

consideration being given to the experience of the business since the last day of the last fiscal month for which a statement has been rendered.

We will deduct from the total amount of "accounts receivable", however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the insured. On deferred payment "accounts receivable", we will deduct unearned interest and service charges.

2. We will further adjust the monthly amount of "accounts receivable" in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, giving due consideration to the normal fluctuations in the amount of "accounts receivable" within the fiscal month involved. There will be deducted from the total amount of "accounts receivable", however established, the amount of such accounts as evidenced by records, not lost or damaged, or otherwise established or collected by the insured and an amount to allow for probable bad debts which would normally have been uncollectible by the insured.

3. This policy also covers:

   a. Interest charges on any loan to the insured to offset impaired collection, pending repayment of such sums, of "accounts receivable" because of loss to records of "accounts receivable";

   b. Collection expenses in excess of normal collection expenses which are made necessary by loss to records of "accounts receivable"; and

   c. Other expenses, when reasonably incurred by the insured, in re-establishing records of "accounts receivable" following loss.

## B. Ammonia Contamination

We will pay for direct physical loss or damage to covered property arising from ammonia contamination or ammonia pollution.

## C. Automobile Glass Repair and Replacement

We will pay the cost to repair or replace direct physical loss or damage to any glass on a covered "automobile". Such coverage will not be subject to the policy deductible.

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

**D. Arson and Crime Reward**

We will pay up to $10,000 for rewards you pay for information leading to convictions of perpetrators who caused direct physical loss or damage to Covered Property from a Covered Cause of Loss not otherwise excluded.

**E. Debris Removal**

We will pay for expenses incurred in the removal of debris of Covered Property resulting from direct physical loss or damage from a Covered Cause of Loss not otherwise excluded.

We will not pay for costs to:

1. Extract or remove "pollutants" from land, atmosphere or any body of water;

2. Extract or remove "pollutants" from the debris;

3. Remove, restore or replace contaminated or polluted land, atmosphere or any body of water;

4. Remove or transport property debris to a site for storage or decontamination required because the property or debris is affected by "pollutants", whether or not such removal, transportation or decontamination is required by law or regulation; or

5. Store any property or debris requiring specialized storage because the property or debris is affected by "pollutants", whether or not such storage is required by law or regulation;

regardless of any other cause or event which contributes concurrently or in any sequence to the direct physical loss or damage.

**F. Demolition and Increased Cost of Construction**

Where Covered Property has sustained direct physical loss or damage from a Covered Cause of Loss not otherwise excluded, we will pay for:

1. The cost of demolishing the undamaged property including the cost of clearing the site;

2. The value of the undamaged part of the property which must be demolished;

3. The increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site required by law or ordinance regulating the repair or reconstruction of the damaged property, but we will not pay more than it would have cost had it been repaired or reconstructed on the original site, nor will we pay for the cost to acquire land. The increased rebuilding costs must be kept to the minimum needed to

satisfy legal requirements. We will not pay for any increased cost of construction unless the property is actually rebuilt or replaced within two (2) years; and

4. Any increase in loss of income, "extra expense" or loss of "rental value" arising out of the reasonably required additional time required to comply with any law or ordinance regulating the repair or reconstruction of the damaged property compared with the time it would have taken to repair or reconstruct the property with materials of like kind and quality.

**G. Expediting Expenses**

We will pay the actual loss sustained to:

1. Make temporary repairs;

2. Expedite permanent repairs; and

3. Expedite permanent replacement

of Covered Property resulting from direct physical loss or damage from a Covered Cause of Loss not otherwise excluded.

**H. Extra Expense**

We will pay the necessary "extra expense" incurred by the insured in order to continue as nearly as practicable the normal operation of the insured's business following direct physical loss or damage to Covered Property from a Covered Cause of Loss not otherwise excluded.

We will pay for such necessary expense incurred for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been damaged or destroyed, commencing with the date of damage or destruction and not limited by the date of expiration of the policy.

**I. Fire Department Service Charge**

We will pay up to $25,000 for:

1. Fire department charges and other extinguishing expenses for which the insured may be assessed; and

2. The cost of fire extinguishing materials expended by the insured

resulting from direct physical loss or damage to Covered Property from a Covered Cause of Loss not otherwise excluded. This Coverage Extension, however, does not apply if you are a fire department or a fire district.

**J. Loss of Income**

We will pay the actual loss of income sustained by the insured during the term of this policy due to interruption of business resulting from direct

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

physical loss or damage to Covered Property from a Covered Cause of Loss not otherwise excluded. Such loss will not exceed the reduction in gross earnings less charges and expenses which do not necessarily continue during interruption of business. We will pay only for such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been damaged or destroyed commencing with the date of such damage or destruction and not limited by the date of expiration of the policy. We will not pay normal charges and expenses including payroll expenses, to the extent necessary to resume operations of the insured with the same quality of service which existed immediately preceding the loss.

### K. Personal Effects of Insureds

We will pay up to $50,000 to repair or replace the personal effects of your director, employee, authorized volunteer or medical director if the personal effects are lost or damaged while responding to, during the course of or returning directly from "emergency operations", or during "training operations", and while the director, employee, authorized volunteer or medical director is otherwise engaged in his duties for you.

### L. Personal Effects of Patients and Fire Victims

We will pay up to $50,000 for the cost to repair or replace the personal effects · of fire victims, medical· patients and their immediate relatives, if the personal effects are lost or damaged while in your care, custody, and control during "emergency operations" or in transit to a medical care facility.

### M. Personal Automobiles of Insureds

We will pay the cost to repair not to exceed the actual cash value of the damage to the personal "automobiles" of a director, employee, authorized volunteer or medical director if the "automobile" is damaged while responding to, during the course of or returning directly from "emergency operations", during "training operations", or while the director, employee, authorized volunteer or medical director is engaged in duties for the insured. If an "automobile" is insured under another insurance policy, our coverage is limited to reimbursing the amount of the deductible that applies to the "automobile" under the other policy.

### N. Pollutant Clean Up and Removal

We will pay up to $250,000 for any damages and expenses you incur to extract "pollutants" from land or water at premises owned by or leased to an Insured if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" occurs during the policy period and not from a "specified cause of loss". Damages and expenses will be paid only if they are reported to us in writing within one hundred eighty (180) days of the date on which the loss occurs.

We will not pay for costs to test for, monitor or assess the existence, concentration or effects of "pollutants". However, we will pay for testing which is performed in the course of extracting "pollutants" from the land or water.

SECTION VI. EXCLUSIONS, subsection O. does not apply to subsection N.

### O. Preservation of Property

We will pay for any direct physical loss or damage occurring during necessary removal of Covered Property to preserve it from a Covered Cause of Loss:

1. While it is being moved or while temporarily stored at another location; and

2. Only if direct physical loss or damage occurs within fifteen (15) days after the property is first moved.

### P. Recertification of Equipment and Automobiles

We will pay up to $50,000 for recertification expenses for emergency services equipment and "automobiles" resulting from direct physical loss or damage to Covered Property from a Covered Cause of Loss not otherwise excluded.

### Q. Rental Value

We will pay the actual loss sustained by the Insured for necessary untentantability of the Covered Property resulting from direct physical loss or damage to Covered Property from a Covered Cause of Loss not otherwise excluded. However, out payment will not exceed the reduction in "rental value" less charges and expenses which do not necessarily continue during the period of untenantability, for only such length of time as would be required with the exercise of due diligence to rebuild, repair or replace the part of the property damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy.

### R. Towing and Transportation Expenses

We will pay up to $5,000 for towing and transportation expenses you incur after a covered "automobile" is disabled.

### S. Utility Interruption

We will pay for direct physical loss or damage to Covered Property from utility interruption. Utility includes gas, electric, water and telephone services.

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

Help

M. "Mobile equipment" means equipment, implements, tools and watercraft. However, "mobile equipment" does not include:

1. Aircraft;

2. Plans, blueprints, designs or specifications;

3. Property which has become a part of any structure;

4. Property other than watercraft while underground, underwater, airborne or waterborne (except while being transported on a regular ferry line);

5. Property while leased, loaned or rented to others, unless such lease, loan or rental includes an equipment operator employed by the Insured; and

6. "Automobiles".

N. "Penstock" means a conduit constructed of manmade materials built for the purpose of conveying water to a hydroturbine. "Penstock" does not include tunnels, canals, aqueducts or similar excavations, or the cost of these excavations, which are excavated from or consist of natural materials.

O. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including but not limited to asbestos, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material (whether such materials are intended to be or have been recycled, reconditioned or reclaimed) which are designated as "pollutants" in listings published by the United States Environmental Protection Agency (U.S.E.P.A) or by any other governmental authority, or if unlisted, exhibits the characteristics of ignitibility, corrosivity, reactivity or toxicity to a degree which would cause them to be so listed if the subject were to be addressed by the U.S.E.P.A. or by any other governmental authority.

P. "Rental value" is defined as the sum of:

1. The total anticipated gross rental income from tenant occupancy of real property as furnished and equipped by the Insured;

2. The amount of all charges which are the legal obligations of the tenant(s) and which would otherwise be obligations of the Insured; and

3. The fair "rental value" of any portion of said property which is occupied by the Insured.

In determining the "rental value", due consideration will be given to the rental experience before the date of damage or destruction and the probable experience had no direct physical loss or damage occurred.

Q. "Replacement cost value" means the cost to replace Covered Property with like kind and quality without deducting for depreciation.

R. "Specified cause of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or "automobiles"; riot or civil commotion; sinkhole collapse; volcanic action; collision; upset or overturn; vandalism; sprinkler leakage; or falling objects.

S. "Training operations" means activities used to prepare, train, or instruct members of a fire department, hazardous materials unit, or first aid, ambulance or rescue squad in accepted and recognized emergency procedures, including municipal, state, and federal standards.

T. "Vacant building" means any building that:

1. Does not contain enough contents to conduct customary operations; or

2. Has no portion occupied or in use.

A building which otherwise meets this definition of "vacant building" will not be considered a "vacant building" if there are other occupied buildings on the same premises. A building under construction or renovation will not be considered a "vacant building".

U. "Valuable papers and records", means written, printed or otherwise inscribed documents and records including, but not limited to, books, "data", maps, films, drawings, abstracts, deeds, mortgages and manuscripts.

However, "valuable papers and records" does not mean money or securities. Money includes currency, coins, bank notes, travelers checks, register checks and money orders. Securities includes negotiable and non-negotiable instruments or contracts representing either money or other property, such as tokens, tickets, revenue and other stamps and evidences of debt issued in connection with credit or charge cards.

## SECTION XI -- CONDITIONS

This Coverage Part is subject to the Common Policy Conditions and the following conditions:

A. **Abandonment**

There can be no abandonment to us of Covered Property.

B. **Appraisal**

In the event that the Insured and we disagree over the amount:

1. To rebuild, repair or replace damaged or destroyed property; or

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

2.  The amount to be paid for a loss,

the Insured and we will each appoint a competent appraiser. The two appraisers will:

1.  Appoint a disinterested third appraiser as umpire;

2.  Obtain reconstruction, replacement or repair estimates; and

3.  Calculate the amount due as payment for the property.

If an Insured's appraiser and our appraiser cannot come to an agreement, they will submit their appraisals to the umpire. The agreed upon cost to rebuild, repair or replace will be based on an agreement, in writing, by any two of the three appraisers.

The Insured and we will each pay their own appraisers and equally share the cost of the umpire.

### C.  Loss to Property of Others

In case of direct physical loss or damage to property of others held by the Insured for which claim is made upon us, we reserve the right to adjust such claim with the owner or owners of the property. If legal proceedings are taken to enforce a claim against the Insured with respect to such loss, we reserve the right at our option without expense to the Insured, to conduct and control the defense on behalf of and in the name of the Insured. No action on our part in such regard will increase the limits under this Coverage Part.

### D.  No Benefit to Bailee

No entity other than an Insured having custody of Covered Property will benefit from this insurance.

### E.  Notice of Loss

As soon as practicable after any loss becomes known to the Insured, you will report such loss with full particulars to us.

### F.  Other Insurance

You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this policy. If you do, except as otherwise provided in the Coverage Part, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance bears to the combined limits of all insurance covering on the same basis.

### G.  Payment of Loss

All adjusted claims will be due and payable sixty (60) days after the presentation and acceptance of a satisfactory proof of loss at our office at 4512 Feather River Drive, Suites F&G, Stockton, California, 95219.

### H.  Policy Period, Coverage Territory

Under this Coverage Part:

1.  We cover loss or damage commencing:

    a.  During the policy period shown in the Declarations; and

    b.  Within the coverage territory.

2.  The coverage territory is the United States of America (including its territories and possessions), Puerto Rico and Canada.

### I.  Proof of Loss

In the event of loss, it will be necessary for the Insured, within ninety (90) days following demand thereof by us, to render a signed and sworn proof of loss to us or our appointed representative stating: the place, time and cause of the loss; the interests of the Insured and all others in the damaged or destroyed property; the value of the property involved in the loss; and the amount of the loss.

### J.  Protection of Damaged Property

The Insured will take all reasonable steps to protect the Covered Property from further damage and will keep a record of expenses for emergency or temporary repairs for consideration in the settlement of the claim. Such measures will not increase the Limits of Insurance.

### K.  Recovered Property

If either an Insured or we recover any property after loss settlement, that party must give the other prompt notice. At the Insured's option, the property will be returned to the Insured. The Insured must then return to us the amount we paid to the Insured for the loss of the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the applicable Limit of Insurance.

### L.  Unintentional Failure to Report Property

Your failure to report to us all the property, equipment, and automobiles to be insured under this coverage will not prejudice your coverage for that property provided such omission is not intentional on your part and you report the property, equipment or automobiles as soon as you discover the omission.

CARSDI 1100a (10/99)                  Page 9 of 9

Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

ENDORSEMENT NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (Standard Time) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| | | | | A.M. | | | |
| | | | | | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:
**PROPERTY COVERAGE PART**

| SCHEDULE | | | | |
|---|---|---|---|---|
| | | Provisions Applicable | | |
| Description of Property | Loss Payee (Name & Address) | Loss Payable | Lender's Loss Payable | Contract of Sale |
| 32 X 10 Mobile Office Value $12,500 Serial No. SMC-00100-462 | William Scotsman, Inc. 8211 Town Center Drive Baltimore MD 21236-5997 | | X | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

The following is added to SECTION **VII.** LOSS PAYMENT, as indicated by an "X" in the Schedule:

**A.  Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

1.  Adjust losses with you; and

2.  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B.  Lenders Loss Payable**

1.  The Loss Payee shown in the Schedule is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

    a.  Warehouse receipts;

    b.  A contract for deed;

    c.  Bills of lading;

    d.  Financing statements; or

    e.  Mortgages, deeds of trust, or security agreements.

CARSDI 1220 (8/99)                    Page 1 of 2

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b. The Loss Payee had the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us or your failure to do so; and

      (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

      All of the terms of this Coverage Part will then apply directly to the Loss Payee.

   d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part;

      (1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      (2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

2. If we cancel this policy, we will give written notice to the Loss Payee at least:

   a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

D. Contract of Sale

   1. The Loss Payee shown in the Schedule is a person or organization you have entered a contract with for the sale of Covered Property.

   2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

      a. Adjust losses with you; and

      b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

   3. The following is added to the Other Insurance Condition:

      For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

_____    _____
AUTHORIZED REPRESENTATIVE                 DATE

CARSDI 1220 (8/99)          Page 2 of 2

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1994

# CALIFORNIA RURAL SPECIAL DISTRICTS INSURANCE PROGRAM
# LIABILITY COVERAGE PART

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you", and "your" and "Named Insured" refer to the entity identified as the "Named Insured" in the Declarations. The words "Insured" or "Insureds" refer to any person or organization qualifying as an "Insured" under SECTION IV - WHO IS AN INSURED. The words "we", "us", "our" and "Company" refer to the Company stated in the Declarations as providing this insurance.

Other words and phrases that appear in quotation marks have special meanings. Refer to SECTION VI - DEFINITIONS and other provisions of this policy for such meanings.

All Coverage Parts included in this policy are subject to the Common Policy Conditions.

## SECTION I -- INSURING AGREEMENT

A. We shall pay on behalf of the Insured those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", "personal injury", "advertising injury", "professional liability" or "wrongful acts" to which this Coverage Part applies. We shall have the right and duty to defend the Insured against any "suit" seeking those damages, even if the allegations are groundless, false or fraudulent. We may, at our discretion, investigate any "occurrence", offense, error, omission or "wrongful act" and settle any claim or "suit" that may result. We will not be obligated to pay any claim or judgment or to defend any "suit" after our Limit of Insurance has been exhausted.

B. This Coverage Part applies to "bodily injury" and "property damage" occurring during the policy period only if the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory".

C. This Coverage Part applies to "personal injury" and "advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period. Coverage is extended to apply to "employment practices liability" caused by an offense prior to the policy period and after the Retroactive Date shown in the Declarations, provided that:

 1. At the inception of the policy period, the Insured against whom the claim is made neither knew nor could have reasonably foreseen that such offense might have been the basis of a claim or "suit"; and

 2. No other valid or collectible insurance applies to the "employment practices liability".

D. This Coverage Part applies to "professional liability" caused by an error or omission in the "coverage territory" during the policy period only:

 1. By a fire district or its employees while acting in the course and scope of their employment for the fire district committed solely in the conduct of either providing or failing to provide "professional health care services" to others;

 2. By a water or wastewater district, or other entity whose primary duties are the distribution and treatment of water or wastewater, committed solely in the conduct of testing and treating water or wastewater; or

 3. By a cemetery district.

E. This Coverage Part applies to "wrongful acts" which take place during the policy period. Coverage is extended to apply to "wrongful acts" prior to the policy period and after the Retroactive Date shown in the Declarations, provided that:

 1. At the inception of the policy period, the Insured against whom the claim is made neither knew nor could have reasonably foreseen that such "wrongful act" might have been the basis of a claim or "suit"; and

 2. No other valid or collectible insurance applies to the "wrongful act".

## SECTION II -- LIMITS OF INSURANCE

A. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

 1. Insureds under this Coverage Part;

 2. Persons or organizations who sustain injury or damage; or

 3. Claims made or "suits" brought.

CARSDI 1101 (8/99)                    Page 1 of 10

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

B. The Bodily Injury and Property Damage Per Occurrence Limit of Insurance is the most we will pay because of all "bodily injury" and "property damage" arising out of any one "occurrence". The Bodily Injury and Property Damage Coverage Aggregate Limit of Insurance is the most we will pay for all damages because of "bodily injury" and "property damage".

C. The Personal Injury and Advertising Per Person or Organization Limit of Insurance is the most we will pay for damages because of all "personal injury" and "advertising injury" sustained by any one person or organization. The Personal Injury and Advertising Injury Coverage Aggregate Limit of Insurance is the most we will pay for all damages because of "personal injury" and "advertising injury".

D. The Professional Liability Per Claim Limit of Insurance is the most we will pay for each such claim. The Professional Liability Coverage Aggregate Limit of Insurance is the most we will pay for all damages because of "professional liability". All claims arising out of the same error or omission or interrelated errors or omissions of one or more of the insureds shall be considered a single claim.

E. The Wrongful Act Per Claim Limit of Insurance is the most we will pay for each such claim. The Wrongful Act Coverage Aggregate Limit of Insurance is the most we will pay for all damages because of "wrongful acts". All claims arising out of the same "wrongful act" or inter-related "wrongful acts" of one or more of the insureds shall be considered a single claim.

F. The Fire Damage Limit Per Fire is the most we will pay for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

G. If more than one Limit of Insurance in the Declarations applies to an "occurrence", offense, error, omission, or claim, or series of related "occurrences", offenses, errors, omissions, or claims, the most we will pay for the sum of all damages for "bodily injury", "property damage", "personal injury", "advertising injury", "professional liability" and "wrongful acts" is the highest available Per Occurrence, Per Person or Organization, or Per Claim Limit of Insurance, and the multiple applicable Limits of Insurance shall not be aggregated.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months,

starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION III -- SUPPLEMENTARY PAYMENTS

We shall pay, with respect to any claim or "suit" we defend:

A. All expenses and "defense costs" we incur.

B. All costs taxed against the insured in the "suit".

C. The cost of bonds to release attachments, but only for bond amounts within the Limits of Insurance. We do not have to furnish these bonds.

D. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 per day because of time off from work.

E. Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any "automobile" to which "bodily injury" coverage applies. We do not have to furnish these bonds.

F. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

G. All interest on the full amount of any judgment that accrues after the entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

H. Up to $10,000 in medical expenses for "bodily injury" caused by an accident:

   1. On premises you own or rent;

   2. On ways next to premises you own or rent; or

   3. Because of your operations;

   Provided that:

   1. The accident takes place in the "coverage territory" during the policy period; and

   2. The expenses are incurred and reported to us within three (3) years from the date of the accident

   We will not pay medical expenses for "bodily injury":

CARSDI 1101 (8/99)                    Page 2 of 10

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

1. To any Insured, unless the "bodily injury" arises from the use of an "automobile";

2. To a person hired to do work for or on behalf of any Insured or a tenant of any Insured;

3. To a person injured on that part of the premises you own or rent that the person normally occupies;

4. Excluded under SECTION V - EXCLUSIONS;

5. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

6. To any person injured while taking part in athletics; or

7. To a person whether or not an employee of any Insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits or a similar law.

I. Up to $5,000 reimbursement to the Insured for legal expenses necessarily incurred by the Insured in defending a claim seeking relief or redress in any form other than monetary damages. This legal expense coverage does not apply to a dispute between any Insured and us. Reimbursable legal expenses are limited to:

1. Fees or expenses paid by the Insured to an attorney or law firm;

2. Fees or expenses paid by the Insured to the court having jurisdiction over such claim;

3. Fees or expenses paid by the Insured to witnesses that testify on the Insured's behalf except for any witness who is an Insured; or

4. The cost of any required court bonds paid by the Insured, but we do not have to provide such bonds.

In the event of multiple claims, all of which pertain to the same "occurrence", offense, error, omission or "wrongful act", $5,000 is the most we will reimburse the Insured for all covered legal expenses arising out of all such multiple claims, regardless of the number of claims or claimants.

The limits and expenses in SECTION III -- SUPPLEMENARY PAYMENTS are in addition to the limits afforded under SECTION II -- LIMITS OF INSURANCE.

## SECTION IV -- WHO IS AN INSURED

The term "Insured" as used herein means the entity designated in the Declarations as the Named Insured and, except as excluded by endorsement to this Coverage Part, the following:

A. A governmental agency or subdivision, department, municipal body, board, commission or not-for-profit corporation which is owned and controlled by you.

B. All persons who were, now are or shall be elected, appointed or employed as members of your board, commission or agency while acting within the scope of their duties.

C. Your employees or authorized volunteers but only for acts within the scope of employment by you or in the course of their duties for you and at your direction.

D. Your director or employee while serving on the board of directors of an organization that is a separate and distinct entity not subject to your direction and control, provided:

1. Such organization was established and is currently chartered as a non-profit organization; and

2. The primary purpose of such organization is to support and further the efforts and welfare of individuals or organizations that provide fire fighting services, emergency medical response or rescue services, or water, sewer or cemetery services.

E. Any person while providing services under a mutual aid agreement, joint powers agreement or similar arrangement, but only with respect to the conduct of your business and only to the extent of your participation or your interest.

F. The legal representative of any deceased natural person as defined in A., B., or C. above, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

G. Any owner of commandeered equipment while the equipment is in your temporary care, custody or control and is being used as part of "emergency operations".

H. Your director or employee with respect to "personal injury" resulting form his/her affiliation with you for acts outside the course and scope of his/her duties and then excess over any other insurance specifically insuring against "personal injury".

I. Any person while using any "owned automobile" or "hired automobile" and any person legally responsible for the use thereof, provided the actual use of the "automobile" is with your permission.

J. Any person designated in the foregoing paragraphs A., B. and C. while acting within the

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

course and scope of his/her duties with respect to the use of an "automobile" not owned by you. But the insurance provided to that person under this Coverage Part shall be excess over any other insurance specifically insuring said "automobile".

K. Your medical director, but only with respect to his/her "administrative duties" for you.

However, no medical director is an Insured for:

1. "Bodily injury", "personal injury" or "wrongful acts" arising out of his/her providing or failing to provide "professional health care services" as a physician, except while performing or failing to perform "administrative duties" as a medical director on your behalf; or

2. "Property damage" to property owned by, occupied by, rented to, or loaned to that medical director.

L. Your director, employee or medical director while acting as a Good Samaritan independent from you, but only when he/she encounters the scene of an emergency requiring sudden action. In no event will such director, employee or medical director who responds to the scene of an emergency with or for any other emergency service organization be an Insured.

However, no director, employee or medical director is an Insured for:

1. Damages or injury arising out of his/her providing or failing to provide, as a physician, on-line medical direction or medical command via telecommunication to emergency medical personnel; or

2. "Property damage" to property owned or occupied by, or rented or loaned to that director, employee, or medical director.

## SECTION V -- EXCLUSIONS

This Coverage Part does not apply to:

A. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

B. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

1. That the Insured would have in the absence of the contract or agreement; or

2. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

C. **Aircraft**

Liability or damages arising out of the ownership, maintenance, use, loading or unloading of aircraft owned by you.

D. **Workers Compensation and Similar Laws**

Any obligation of an Insured, or any carrier as insurer thereof, under any workers compensation law, unemployment compensation law, disability benefits law, or under any similar law.

E. **Employer's Liability**

"Bodily injury" to:

1. An employee of the Insured arising out of and in the course of:

   a. Employment by the Insured; or

   b. Performing duties related to the conduct of the Insured's business; or

2. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph 1. above.

This exclusion applies:

1. Whether the Insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the Insured under an "insured contract".

F. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

G. **Costs Estimates and Failure to Award Contracts**

Liability or damages arising out of estimates of probable costs, or cost estimates being exceeded, or failure to award contracts in accordance with statute or ordinance which under law must be submitted for bids.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

**H. Failure to Perform or Breach of Contract**

Liability or damages arising out of failure to perform or breach of a contractual obligation. This exclusion does not apply to liability or damages arising out of the failure to supply water.

**I. Punitive or Exemplary Damages**

Punitive or exemplary damages, statutory multiples of damages, civil or criminal fines or penalties, or any other damages over and above actual damages, by whatever name called, irrespective of whether the Insured has taken any action or passed any resolution electing to pay such damages.

**J. Damage to Property**

"Property damage" to:

1. Property owned by the Insured;

2. Property rented to or leased to the Insured where the Insured has assumed liability under contract for damage to or destruction of such property, unless the Insured would have been liable in the absence of such contract.

**K. Pollution**

Liability arising out of:

1. "Bodily injury", "property damage", "personal injury", "advertising injury", "professional liability" or "wrongful acts" which would not have occurred or taken place in whole or in part except for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

2. Any loss, cost or expense arising out of any:

   a. Request, demand, or order that an Insured, or any others, test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this exclusion shall not apply to "bodily injury", "property damage", "personal injury", "advertising injury", "professional liability" or "wrongful acts" arising out of:

1. "Emergency operations" conducted away from premises owned by, or rented to, an Insured;

2. "Training operations" or

3. Water runoff from the cleaning of equipment used in "emergency operations".

This exclusion shall also not apply to "bodily injury", "property damage", "personal injury", "advertising injury", "professional liability" or "wrongful acts" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

1. That is sudden and accidental, and neither expected nor intended by an Insured;

2. Arising out of the use, handling, storage, discharge, dispersal, release or escape of any chemical used in the water treatment process;

3. Arising out of explosion, lightning, windstorm, vandalism or malicious mischief, collapse, riot and civil commotion, flood, or earthquake;

4. Collision, upset or overturn of an "automobile" or equipment;

5. Arising out of the heat, smoke or fumes from a "hostile fire";

6. Arising out of weed abatement or spraying;

7. Arising out of pest abatement or spraying;

8. Arising out of propane or natural gas; or

9. Arising out of the "products hazard".

**L. Asbestos**

Liability or damages at any time arising out of:

1. The manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2. Any obligation of the Insured to indemnify any party because of damage arising any time as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3. Any obligation to defend any "suit" or claim against the Insured seeking damages, if such "suit" or claim results from or is contributed to, by any or any combination of the following: manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

However, this exclusion shall not apply to "bodily injury", "property damage", "personal injury", "advertising injury", "professional liability" or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

"wrongful acts" arising out of fire fighting, rescue, or hazardous materials unit operations conducted away from premises owned by, or rented to, an insured.

## M. Nuclear Energy Liability

Liability or damages:

1. With respect to which the insured under this policy is an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, the Mutual Atomic Energy Liability Underwriters, the American Nuclear Insurers, or the Nuclear Insurance Association of Canada, or any successor organizations, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;

2. Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

   a. Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

   b. The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

3. Resulting from the "hazardous properties" of "nuclear material" if:

   a. The "nuclear material":

      (1) Is at any "nuclear facility" owned by, or operated by or on behalf of, the insured; or

      (2) Has been discharged or dispersed therefrom;

   b. The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of the insured; or

   c. The "bodily injury" or "property damage" arises out of the furnishing by the insured of services, materials, parts or equipment in connection with the planing, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States

of America, its territories or possessions, or Canada, this subsection c. applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion M.:

1. "Hazardous properties" include radioactive, toxic or explosive properties.

2. "Nuclear facility" means:

   a. Any "nuclear reactor";

   b. Any equipment or device designed or used for:

      (1) Separating the isotopes of uranium or plutonium;

      (2) Processing or utilizing "spent fuel"; or

      (3) Handling, processing or packaging "waste";

   c. Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233, or more than 250 grams of uranium 235;

   d. Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

3. "Nuclear material" means "source material", "special nuclear material" or "byproduct material".

4. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

5. "Property damage" includes all forms of radioactive contamination of property.

6. "Source material", "special nuclear material", and "byproduct material" have the meaning given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

7. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

CARSDI 1101 (8/99)

Page 6 of 10

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

8. "Waste" means any waste material:

   a. Containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

   b. Resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" included under 2. a. and b. of the definition of "nuclear facility".

N. **Personal Injury or Advertising Injury**

"Personal injury" or "advertising injury":

1. Caused by or at the direction of the Insured with knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury". This exclusion, however, does not apply to "employment practices liability";

2. Arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity;

3. Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

4. Arising out of a criminal act committed by or at the direction of the Insured;

5. For which the Insured has assumed liability in a contract of agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement;

6. Arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement; or

7. Arising out of the wrong description of the price of goods, products or services to conform to any statement of quality or performance made in your advertisement.

O. **Automobile Racing**

"Bodily injury" or "property damage" resulting from the use of an "automobile" in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity.

P. **Personal Injury for Retaliatory Action**

"Personal injury" resulting from retaliatory action by an insured against an employee:

1. Who declined to perform an illegal act in

violation of public policy as specified in legislation, administrative rules, regulations or professional codes of ethics; or

2. Who filed a complaint or claim arising out of "employment practices liability".

Exclusions C. through P. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of insurance applies to this coverage as described in SECTION II – LIMITS OF INSURANCE.

## SECTION VI – DEFINITIONS

A. "Administrative duties" means establishing medical protocol, creating training curriculum, providing medical training, conducting medical quality assurance programs, and carrying out similar duties for managing, training, advising, or monitoring medical services provided to you.

"Administrative duties" do not include:

1. The providing or failure to provide on-line medical direction via telecommunication to emergency medical personnel; or

2. Providing or failing to provide professional health care services to individuals or groups of patients.

B. "Advertising injury" means injury arising out of one or more of the following offenses:

1. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. Oral or written publication of material that violates a person's right of privacy;

3. Misappropriation of advertising ideas or style of doing business; or

4. Infringement of copyright, title or slogan.

C. "Automobile" means a land motor vehicle or trailer.

D. "Bodily injury" means bodily injury, sickness or disease, including mental anguish and death resulting therefrom, and care and loss of services by any person or persons.

E. "Coverage territory" means:

1. The United States of America (including its territories and possessions), Puerto Rico and Canada;

2. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in 1. above;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

3. Anywhere in the world if:

   a. The injury or damage arises out of the activities of a person whose residence is in the United States (including its territories and possessions), Puerto Rico or Canada; and

   b. The insured's responsibility to pay damages is determined in an actual trial in the United States (including its territories and possessions), Puerto Rico or Canada, or in a settlement to which we agree.

F. "Defense costs" means reasonable fees charged by an attorney and all other reasonable fees, costs and expenses attributable to the investigation, defense or appeal of a claim to which this Coverage Part applies, except salaries of employees of the insured and the office expenses of the insured.

G. "Emergency operations" means actions:

   1. Which are urgent responses necessary for protection of property, human life, health or safety;

   2. Which result from the performing or attempting to perform fire fighting services, hazardous materials unit services, first aid, ambulance or rescue squad services, or related services, including the stabilizing or securing of an emergency scene; and

   3. Which are sanctioned by an insured.

H. "Employment practices liability" means:

   1. Refusal to employ that person;

   2. Termination of that person's employment;

   3. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination; or

   4. Consequential loss to the spouse, child, parent, brother or sister of that person to whom any of the employment-related practices described in subsections 1., 2. and 3. above apply.

   "Employment practices liability" applies:

   1. Whether the insured may be liable as an employer or in any other capacity; and

   2. To any obligation to share damages with or repay someone else who must pay damages because of injury.

I. "Hostile fire" means a fire that becomes

uncontrollable or breaks out from where it was intended to be.

J. "Hired automobile" means an "automobile" used under contract on behalf of, or loaned to, the insured, provided such "automobile" is not owned by or registered in the name of the insured or an employee or authorized volunteer of the insured.

K. "Insured contract" means:

   1. A lease of premises;

   2. Any easement or license agreement;

   3. A sidetrack agreement;

   4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   5. An elevator maintenance agreement; or

   6. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph 6. above does not include that part of any contract or agreement:

   a. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

      (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

   b. Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in 2. above and supervisory, inspection, architectural or engineering activities; or

   c. That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

CARSDI 1101 (8/99)                    Page 8 of 10

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

L. "Liquid" shall not mean domestic water or agricultural water or recycled water or water furnished to commercial users.

M. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

N. "Owned automobile" means an "automobile" owned by or under long term lease to the insured.

O. "Personal injury" means injury arising out of one or more of the following offenses:

1. False arrest, malicious prosecution or willful detention;

2. Libel, slander or defamation of character;

3. Invasion of privacy;

4. Wrongful entry or eviction, or other invasion of the right of private occupancy;

5. Assault and battery;

6. Non-employment discrimination prohibited by law or violation of federal civil rights laws, not intentionally committed by or at the direction of an insured; and

7. "Employment practices liability". ·

P. "Pollutants" means any solid, semi-solid, noise, "liquid", gaseous or thermal irritant or contaminant, including smoke, vapor, soot, mists, fumes, acids, alkalis, chemicals, biological and other etiologic agents or materials, genetically engineered materials, teratogenic, carcinogenic and mutagenic materials, waste materials and any other irritant or contaminant. Waste material includes materials that are intended to be or have been recycled, reconditioned or reclaimed.

"Pollutants" does not include:

a. Waterborne asbestos;

b. Sewage that emanates form a sewer line or sewer system; or

c. Sewage that backs up from a sewer line or sewer system.

Q. "Products hazard" includes "bodily injury" or "property damage" arising out of the insured's products or· reliance upon a representation or warranty made at anytime with respect thereof, but only if the "bodily injury" or "property damage" occurs away from premises owned by, or rented to, the insured and after physical possession of such insured's products has been relinquished to others.

R. "Professional health care services" means:

1. Providing medical or nursing services;

2. Providing professional services of any other health care professional, including emergency medical technicians and paramedics;

3. Furnishing or dispensing drugs or medical, surgical or dental supplies or appliances;

4. Handling of patients:

a. From the place where they are accepted from movement into or onto the means of transport;

b. During transport; and

c. From the means of transport to the place where they are finally delivered;

5. Dispatching of, including the failure or refusal to dispatch, personnel to provide any of the above services;

6. Serving on, or carrying out the orders of, a health care accreditation board or similar professional board or committee; and

7. Establishing medical protocol, creating medical training curricula, providing medical training, conducting medical quality assurance programs and carrying out similar duties.

S. "Professional liability" means liability for damages resulting from any error or omission arising out of your professional activities as a fire, cemetery, water or wastewater district, or any other entity whose primary duty is the distribution and treatment of water or wastewater.

T. "Property damage" means:

1. Physical injury to or destruction of tangible property, including the loss of use thereof at any time resulting therefrom; and

2. Loss of use of tangible property that has not been physically injured or destroyed.

U. "Suit" means a civil proceeding in which damages are alleged because of "bodily injury", "property damage", personal injury, "advertising injury", "professional liability" or "wrongful acts" to which this insurance applies. "Suit" includes:

1. An arbitration proceeding in which such damages are claimed and to which an insured must submit or does submit with. our consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which an insured submits with our consent.

V. "Training operations" means activities used to prepare, train or instruct members of a fire department, hazardous materials unit, or first aid,

CARSDI 1101 (8/99)                    Page 9 of 10

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

ambulance or rescue squad in accepted and recognized emergency procedures, including municipal, state, and federal standards.

W. "Wrongful act" means any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty by any insured in the discharge of his/her duties for you, including service with any other entity at your direction, except for the following:

1. Willful commission of a crime or other dishonest, fraudulent, or malicious act;

2. Obtaining financial gain to which the insured is not legally entitled; or

3. Faulty preparation or approval of maps, plans, reports, surveys, designs, bid documents, or specifications; but this exception does not apply to reports provided to any other water purveyor.

Notwithstanding the above exceptions, "wrongful act" also means:

1. Violations of antitrust statutes; and

2. Negligent ministerial acts.

"Wrongful act" does not include an error or omission resulting in "professional liability".

## SECTION VII -- CONDITIONS

### A. Other Insurance

The insurance afforded by this Coverage Part shall be excess of, and shall not contribute with:

1. Any valid and collectible insurance or self-insurance; or

2. Any other primary insurance available to you covering liability for damages arising out of the premises and operations for which you have been added as an additional insured.

When this Coverage Part is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

1. The total amount that all such other insurance would pay for the loss in the absence of this Coverage Part; and

2. The total of all deductible and self-insured amounts under that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this condition and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

ENDORSEMENT NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (Standard Time) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| | | | | | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CALIFORNIA UNINSURED MOTORISTS  COVERAGE -- BODILY INJURY

This endorsement modifies insurance provided under the following:
**LIABILITY COVERAGE PART**

For a covered "automobile" licensed or principally garaged in California this endorsement modifies insurance provided under the following:

**LIABILITY COVERAGE PART**

With respect to coverage provided by this endorsement, the provisions of the LIABILITY COVERAGE PART apply unless modified by this endorsement.

### SCHEDULE

**LIMIT OF INSURANCE**

$1,000,000

Each Accident

### A.  Coverage

1. We will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the insured caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered "automobile" is principally garaged, we will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

### B.  Who Is An Insured

1. You.

2. If you are an individual, any "family member".

3. Anyone else "occupying" a covered "automobile" or a temporary substitute for a covered "automobile." The covered "automobile" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another insured.

### C.  Exclusions

This insurance does not apply to any of the following:

1. Punitive or exemplary damages.

2. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle".

3. The direct or indirect benefit of any insurer or self-insurer under any workers compensation, disability benefits or similar law or to the direct benefit of the United States, a state or its political subdivisions.

CARSDI 1202 (8/99)

Page 1 of 4

Copyright, Insurance Services Office, Inc., 1998

4. "Bodily Injury" sustained by:

   a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "automobile" for Uninsured Motorists Coverage under the LIABILITY COVERAGE PART;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "automobile" for Uninsured Motorists Coverage under the LIABILITY COVERAGE PART; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured for Uninsured Motorists Coverage on a primary basis under any other coverage form or policy.

5. "Bodily Injury" sustained by you or any "family member" while "occupying" any vehicle leased by you or any "family member" under a written contract for a period of six (6) months or more that is not a covered "automobile".

6. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

7. "Bodily Injury" sustained by an insured while "occupying" any "automobile" that is rented or leased to that insured for use as a public or livery conveyance. However, this exclusion does not apply if the insured is in the business of providing public or livery conveyance.

**D. Limit Of Insurance**

1. Regardless of the number of covered "automobiles," insureds, premiums paid, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the Limit of Insurance for Uninsured Motorists Coverage shown in the Schedule.

2. For a vehicle described in paragraph b. of the definition of "uninsured motor vehicle," our Limit of Insurance shall be reduced by all sums paid because of "bodily injury" by or for anyone who is legally responsible, including all sums paid or payable under this policy's Liability Coverage.

3. No one will be entitled to receive duplicate payments for the same elements of loss under this Coverage and any Liability Coverage or Medical Payments Coverage provided by this policy's LIABILITY COVERAGE PART.

We will not make a duplicate payment under this Coverage for any element of loss for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any workers compensation, disability benefits or similar law.

**E. Changes In Conditions**

The Conditions are changed for California Uninsured Motorists Coverage -- Bodily Injury as follows:

1. **Duties In the Event of Occurrence, Offense, Claim or Suit** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Send us copies of the legal papers if a "suit" is brought. In addition, a person seeking coverage under Paragraph b. of the definition of "uninsured motor vehicle" must:

     (1) Provide us with a copy of the complaint by personal service or certified mail if the insured brings an action against the owner or operator of such "uninsured motor vehicle",

     (2) Within a reasonable time, make all pleadings and depositions available for copying by us or furnish us copies at our expense, and

     (3) Provide us with proof that the limits of insurance under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

2. **Legal Action Against Us** is replaced by the following:

No legal action may be brought against us under this Coverage until there has been full compliance with all the terms of this Coverage and with respect to paragraphs a., c., and d. of the definition of "uninsured motor vehicle" unless within one (1) year from the date of the accident:

   a. Agreement as to the amount due under this insurance has been concluded;

   b. The insured has formally instituted arbitration proceedings against us. In the event that the insured decides to

arbitrate, the Insured must formally begin arbitration proceedings by notifying us in writing, sent by certified mail, return receipt requested; or

c. "Suit" for "bodily injury" has been filed against the uninsured motorist in a court of competent jurisdiction.

Written notice of the "suit" must be given to us within a reasonable time after the Insured knew, or should have known, that the other motorist is uninsured. In no event, will such notice be required before one (1) year from the date of the accident. Failure of the Insured or his or her representative to give us such notice of the "suit" will relieve us of our obligations under this Coverage only if the failure to give notice prejudices our rights.

3. **Transfer of Rights of Recovery Against Others to Us** is replaced by the following:

   a. With respect to Paragraphs a., c. and d. of the definition of "uninsured motor vehicle," if we make any payment, we are entitled to recover what we paid from other parties. Any person to or for whom we make payment must transfer to us his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

   b. With respect to paragraph b. of the definition of "uninsured motor vehicle," if we make any payment and the Insured recovers from another party, the Insured shall hold the proceeds in trust for us and pay us back the amount we have paid.

4. **Other Insurance** is replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible

uninsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this Coverage Part is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a excess basis.

5. The following Condition is added:

   **Arbitration**

   a. If we and an Insured disagree whether the Insured is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that Insured, the disagreement will be settled by arbitration. Such arbitration may be initiated by a written demand for arbitration made by either party. The arbitration shall be conducted by a single neutral arbitrator. However, disputes concerning coverage under this endorsement may not be arbitrated. Each party will bear the expenses of the arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the Insured lives. Local rules of law as to arbitration procedures and evidence will apply. The decision of the arbitrator will be binding.

F. **Additional Definitions**

   The following are added to the **Definitons Section:**

   1. "Family member" means your spouse, whether or not a resident of your household, and any other person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

Copyright, Insurance Services Office, Inc., 1996

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an accident provides at least the amounts required by the applicable law where a covered "automobile" is principally garaged;

   b. That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or trailer for which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by the applicable law where a covered "automobile" is principally garaged but that sum is less than the Limit of Insurance for this coverage;

   c. For which an insuring or bonding company denies coverage or refuses to admit coverage except conditionally or with reservation or becomes insolvent; or

   d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must make physical contact with an insured, a covered "automobile" or a vehicle an insured is "occupying."

However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

   b. Owned by a governmental unit or agency;

   c. Designed or modified for use primarily off public roads while not on public roads.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

---

AUTHORIZED REPRESENTATIVE

DATE

CARSDI 1202 (8/99)

Page 4 of 4

Copyright, Insurance Services Office, Inc., 1996

ENDORSEMENT NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (Standard Time) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| | | | | A.M. | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CALIFORNIA UNINSURED MOTORISTS COVERAGE -- PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:
**LIABILITY COVERAGE PART**

For a covered "automobile" licensed or principally garaged in California this endorsement modifies insurance provided under the following:

**LIABILITY COVERAGE PART**

With respect to coverage provided by this endorsement, the provisions of the Coverage Part apply unless modified by the endorsement.

### SCHEDULE
**"Property Damage" Uninsured Motorists Coverage**

| Designation or Description of Covered "Automobiles" | Premium |
|---|---|
| See Schedule on File | Included |

**A. Coverage**

1. We will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or operator of an "uninsured motor vehicle." The damages must result from "property damage" caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Exclusions**

This insurance does not apply to any of the following:

1. The direct or indirect benefit of any insurer of property.

2. Property contained in the covered "automobile".

3. "Property damage" to any motor vehicle owned by you or any "family member" that is not a covered "automobile".

4. "Property damage" to any motor vehicle owned by you to which collision coverage applies under this policy or any other policy.

5. Punitive or exemplary damages.

**C. Limit of Insurance**

1. Regardless of the number of covered "automobiles", claims made, premiums paid or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the lesser of the following:

   a. $3,500; or

   b. The actual cash value of the damaged covered "automobile" at the time of the accident.

2. Any amount payable as damages under this coverage shall be reduced by all sums paid by or for anyone who is legally responsible.

**D. Changes in Conditions**

The Conditions are changed for California Uninsured Motorists Coverage – Property Damage as follows:

CARSDI 1203 (8/99)

Copyright, Insurance Services Office, Inc., 1996

1. **Duties in the Event of Occurrence, Offense, Claim or Suit** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved;

   b. Report the accident or loss to us or to our agent within ten (10) business days; and

   c. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Other Insurance** in the LIABILITY COVERAGE PART is replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this Coverage Part is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

3. The following **Condition** is added:

   **Arbitration**

   a. If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that insured, the disagreement will be settled by arbitration. Such arbitration may be initiated by a written demand for arbitration made by either party within one (1) year. The arbitration shall be conducted by a single neutral arbitrator. However, disputes concerning coverage under this endorsement may not be arbitrated. Each party will bear the expenses of the arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to arbitration procedure and evidence will apply. The decision of the arbitrator will be binding.

E. **Additional Definitions**

1. The following words and phrases have special meaning for California Uninsured Motorists Coverage Property Damage:

   a. "Automobile" means a self-propelled motor vehicle. However, it does not include:

      (1) A vehicle transporting persons for hire, compensation or profit other than van pool vehicle;

      (2) A vehicle designed, used or maintained primarily for the transportation of property; or

      (3) Mobile equipment.

   b. Property damage" means injury to or destruction of a covered "automobile". However, "property damage" does not include loss of use.

2. As used in this endorsement:

   "Uninsured motor vehicle" means a land motor vehicle or trailer that is involved in a collision with a covered "automobile" and for which:

   a. No liability bond or policy at the time of an accident provides at least the amount required for "property damage" liability by the California Financial Responsibility Law; or

   b. The insuring or bonding company denies coverage or refuses to admit coverage except conditionally or with reservation or becomes insolvent.

   The collision must involve direct physical contact between a covered "automobile" and the "uninsured motor vehicle" and:

   a. The owner or operator of the "uninsured motor vehicle" must be identified; or

   b. The "uninsured motor vehicle" must be identified by its license number.

Copyright, Insurance Services Office, Inc., 1996

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

b. Owned by a governmental unit or agency; or

c. Designed for use mainly off public roads while not on public roads.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

_____          _____
                AUTHORIZED REPRESENTATIVE                              DATE

CARSDI 1203 (8/99)                          Page 3 of 3
                            Copyright, Insurance Services Office, Inc., 1996

ENDORSEMENT NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (Standard Time) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| | | | | | | | |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:
**LIABILITY COVERAGE PART**

### SCHEDULE

**Name of Person or Organization:**
William Scotsman, Inc.
8211 Town Center Drive
Baltimore MD 21236-5997

SECTION IV — WHO IS AN INSURED is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**

_____          _____
                AUTHORIZED REPRESENTATIVE                                              DATE

CARSDI 1206 (8/99)
Includes copyrighted material of the Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984

# CALIFORNIA RURAL SPECIAL DISTRICTS INSURANCE PROGRAM
## CRIME COVERAGE PART

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing the insurance.

Words or phrases in quotation marks have special meaning and are defined in the DEFINITIONS sections of this Coverage Part.

All Coverage Parts included in this policy are subject to the Common Policy Provisions.

## EMPLOYEE DISHONESTY COVERAGE SUBPART

### A.  COVERAGE

We will pay for loss of, and loss from damage to, Covered Property resulting directly from a Covered Cause of Loss.

1.  **Covered Property:** "Money", "securities", and "property other than money and securities".

2.  **Covered Cause of Loss:**

   a.  "Employee dishonesty".

   b.  Failure of any "employee" to faithfully perform his or her duties as prescribed by law, when such failure has as its direct and immediate result a loss of your Covered Property, including inability to faithfully perform those duties because of a criminal act committed by a person other than an "employee".

### B.  LIMIT OF INSURANCE

The most we will pay for loss in any one "occurrence" is the Employee Dishonesty Limit of Insurance shown in the Declarations.

### C.  DEDUCTIBLE

1.  We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible shown in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Employee Dishonesty Limit of Insurance.

2.  You must:

   a.  Give us notice as soon as possible of any loss of the type insured under this Coverage even though it falls entirely within the Deductible; and

   b.  Upon our request, give us a statement describing the loss.

### D.  ADDITIONAL EXCLUSIONS, CONDITIONS AND DEFINITIONS

In addition to the Crime General Provisions, this Employee Dishonesty Coverage Subpart is subject to the following:

1.  **Additional Exclusions:** We will not pay for loss or damages as specified below:

   a.  **Employee Cancelled Under Prior Insurance:** Loss caused by any "employee" for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

   b.  **Inventory Shortages:** Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

      (1)  An inventory computation; or

      (2)  A profit and loss computation.

   c.  **Damages:** Damages for which you are legally liable as a result of:

      (1)  The deprivation or violation of the civil rights of any person by an "employee"; or

      (2)  The tortious conduct of an "employee" except conversion of property of other parties held by you in any capacity.

2.  **Additional Conditions**

   a.  **Cancellation As To Any Employee:** This insurance is cancelled as to any "employee":

      (1)  Immediately upon discovery by you or any official or "employee" authorized to manage, govern, or control your "employees" of any dishonest act committed by that "employee" whether before or after becoming employed by you.

Copyright, Insurance Services Office, Inc., 1983, 1984, 1989, 1990, 1994

(2) On the date specified in a notice mailed to you. That date will be at least thirty (30) days after the date of mailing.

The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

**b. Sole Benefit:** This Employee Dishonesty Coverage Subpart is for your sole benefit. No legal proceeding of any kind to recover on account of loss under this Coverage Subpart may be brought by anyone other than you.

**c. Indemnification:** We will indemnify any of your officials who are required by law to give bonds for the faithful performance of their service against loss through dishonest acts of persons who serve under them, subject to the Employee Dishonesty Limit of Insurance.

**3. Additional Definitions**

a. "Employee Dishonesty" means only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons with the manifest intent to:

(1) Cause you to sustain loss; and

(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment) for:

(a) The "employee"; or

(b) Any person or organization intended by the "employee" to receive that benefit.

b. "Occurrence" means all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.

---

**FORGERY OR ALTERATION COVERAGE SUBPART**

**A. COVERAGE**

We will pay for loss involving Covered Instruments resulting directly from the Covered Causes of Loss.

**1. Covered Instruments:** Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

a. Made or drawn by or drawn upon you;

b. Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn;

**2. Covered Causes Of Loss:** Forgery or alteration of, on or in any Covered Instrument.

**3. Coverage Extension**

**Legal Expenses:** If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount we will pay under this extension is in addition to the Forgery or Alteration Limit of Insurance.

**B. LIMIT OF INSURANCE**

The most we will pay for loss in any one "occurrence" is the Forgery or Alteration Limit of Insurance shown in the Declarations.

**C. DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible shown in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Forgery or Alteration Limit of Insurance. This provision does not apply to legal expenses paid under the Legal Expenses Coverage Extension.

**D. ADDITIONAL EXCLUSION, CONDITIONS AND DEFINITIONS**

In addition to the Crime General Provisions Section, this Forgery or Alteration Coverage Subpart is also subject to the following:

**1. Additional Exclusion**

**Acts of Employees:** We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees":

a. Whether acting alone or in collusion with other persons; or

b. Whether while performing services for you or otherwise.

**2. Additional Conditions**

**a. Facsimile Signatures:** We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**b. General Amendment:** As respects this Coverage Subpart, the words Covered Property in the Crime General Provisions mean Covered Instruments.

Copyright, Insurance Services Office, Inc., 1983, 1984, 1989, 1990, 1994

c. **Proof of Loss:** You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

d. **Territory:** We will cover loss you sustain anywhere in the world. The Territory General Condition in the Crime General Provisions does not apply to this Coverage Subpart.

3. **Additional Definition**

"Occurrence" means all loss caused by any person or in which that person is involved, whether the loss involves one or more Covered Instruments.

---

**THEFT, DESTRUCTION AND DISAPPEARANCE COVERAGE SUBPART**

**A. COVERAGE**

We will pay for loss of Covered Property resulting directly from the Covered Causes of Loss.

1. **Inside the Premises**

a. **Covered Property:** "Money" and "securities" inside the "premises" or a "banking premises."

b. **Covered Causes of Loss**
   (1) "Theft"
   (2) Disappearance
   (3) Destruction

c. **Coverage Extensions**

   (1) **Containers of Covered Property:** We will pay for loss of, and loss from damage to, a locked safe, vault, cash register, cash box or cash drawer located in the "premises" resulting directly from an actual or attempted:
      (a) "Theft" of; or
      (b) Unlawful entry into those containers.

   (2) **Premises Damage:** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of Covered Property if you are the owner of the "premises" or are liable for damage to it.

2. **Outside the Premises**

a. **Covered Property:** "Money" and "securities" outside the "premises" in the care and custody of a "messenger."

b. **Covered Causes of Loss**
   (1) "Theft"
   (2) Disappearance
   (3) Destruction

c. **Coverage Extension**

**Conveyance of Property by Armored Motor Vehicle Company:** We will pay for loss of Covered Property resulting directly from the Covered Causes of Loss while outside the "premises" in the care and custody of an armored motor vehicle company.

But we will pay only for the amount of loss that you cannot recover:
   (1) Under your contract with the armored motor vehicle company; and
   (2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**B. LIMIT OF INSURANCE**

The most we will pay for loss in any one "occurrence" is the Theft, Destruction and Disappearance Limit of Insurance shown in the Declarations.

**C. DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible shown in the Declarations. We will then pay the amount of loss in excess of the Deductible, up to the Theft, Destruction and Disappearance Limit of Insurance.

**D. ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS**

In addition to the provisions in the Crime General Provisions, this Coverage Subpart is subject to the following:

**Additional Exclusions:**

We will not pay for loss as specified below:

1. **Accounting or Arithmetic Errors or Omissions:** Loss resulting from accounting or arithmetic errors or omissions.

2. **Acts of Employees:** Loss resulting from any dishonest or criminal act committed by any of your "employees" or authorized representatives:
   a. Acting alone or in collusion with other persons; or
   b. While performing services for you or otherwise.

CARSDI 1102 (8/99)          Page 3 of 8

Copyright, Insurance Services Office, Inc., 1983, 1984, 1989, 1990, 1994

3. **Exchanges or Purchases:** Loss resulting from the giving or surrendering of property in any exchange or purchase.

4. **Fire:** Loss from damage to the "premises" resulting from fire, however caused.

5. **Money Operated Devices:** Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

6. **Transfer or Surrender of Property**

   a. Loss of property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

      (1) On the basis of unauthorized instructions; or

      (2) As a result of a threat to do:

         (a) Bodily harm to any person; or

         (b) Damage to any property.

   b. But this exclusion does not apply under COVERAGE A.2. to loss of Covered Property while outside the "premises" or "banking premises" in the care and custody of a "messenger" if you:

      (1) Had no knowledge of any threat at the time the conveyance began; or

      (2) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

7. **Vandalism:** Loss from damage to the "premises" or its exterior or to containers of Covered Property by vandalism or malicious mischief.

8. **Voluntary Parting of Title to or Possession of Property:** Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**Additional Condition**

**Duties in the Event of Loss:** If you have reason to believe that any loss of, or loss from damage covered to, Covered Property involves a violation of law, you must notify the police.

**Additional Definitions**

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. "Messenger" means you, any of your partners

or any "employee" while having care and custody of the property outside the "premises."

3. "Occurrence" means an:

   a. Act or series of related acts involving one or more persons; or

   b. Act or event, or a series of related acts or events not involving any person.

4. "Premises" means the interior of that portion of any building you occupy in conducting your business.

5. "Theft" means any act of stealing.

---

**COMPUTER FRAUD COVERAGE SUBPART**

A. **COVERAGE**

We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.

1. **Covered Property:** "Money", "Securities" and "Property Other Than Money and Securities".

2. **Covered Cause of Loss:** "Computer Fraud"

B. **LIMIT OF INSURANCE**

The most we will pay for loss in any one "occurrence" is the Computer Fraud Limit of Insurance shown in the DECLARATIONS.

C. **DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible in the Declarations. We will then pay the amount of the loss in excess of the Deductible, up to the Computer Fraud Limit of Insurance. In the event that more than one Deductible could apply to the loss, only the highest Deductible may be applied.

D. **ADDITIONAL EXCLUSIONS, CONDITIONS AND DEFINITIONS**

In addition to to the provisions in the Crime General Provisions, this Coverage Subpart is subject to the following:

1. **Additional Exclusions:** We will not pay for loss as specified below:

   a. **Acts of Employees, Directors, Trustees or Representatives:** Loss resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or authorized representatives:

      (1) Acting alone or in collusion with other persons; or

      (2) While performing services for you or otherwise.

Copyright, Insurance Services Office, Inc., 1983, 1984, 1989, 1990, 1994

b. **Inventory Shortages:** Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

(1) An inventory computation; or

(2) A profit and loss computation.

2. **Additional Conditions**

a. **Duties in the Event of Loss:** If you have reason to believe that any loss of, or loss from damage to, Covered Property involves a violation of law, you must notify the police.

b. **Special Limit of Insurance for Specified Property:** We will only pay up to $5,000 for any one "occurrence" of loss of, and loss from damage to, manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

3. **Additional Definitions**

a. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

b. "Computer Fraud" means "theft" of property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises" to a person (other than a "messenger") outside those "premises" or to a place outside those "premises".

c. "Messenger" means you, any of your partners or any "employee" while having care and custody of the property outside the "premises".

d. "Occurrence" means an:

(1) Act or series of related acts involving one or more persons; or

(2) Act or event, or a series of related acts or events not involving any person.

e. "Premises" means the interior of that portion of any building you occupy in conducting your business.

f. "Theft" means any act of stealing.

**CRIME GENERAL PROVISIONS**

Unless stated in any Crime Coverage Subpart, Declarations or endorsement, the following General Exclusions, General Conditions and General Definitions apply to all Crime Coverage Subparts forming part of this Coverage Part.

A. **GENERAL EXCLUSIONS**

We will not pay for loss as specified below:

1. **Acts Committed By Any Owner:** Loss resulting from any dishonest or criminal act committed by your owner or partner whether acting alone or in collusion with other persons.

2. **Governmental Action:** Loss resulting from seizure or destruction of property by order of governmental authority.

3. **Indirect Loss:** Loss that is an indirect result of any act or "occurrence" covered by this Coverage Part including, but not limited to loss resulting from:

a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to Covered Property.

b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this Coverage Part.

c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this Coverage Part.

4. **Legal Expenses:** Expenses related to any legal action.

5. **Nuclear:** Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

6. **War and Similar Actions:** Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

B. **GENERAL CONDITIONS**

1. **Concealment, Misrepresentation Or Fraud:** This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

a. This insurance;

b. The Covered Property;

c. Your interest in the Covered Property; or

d. A claim under this insurance.

2. **Coverage Extensions:** Unless stated otherwise in any Coverage Subpart, Declarations, or endorsement, our liability under any Coverage Extension is part of, not

CARSDI 1102 (8/99)                    Page 5 of 8

In addition to the Limit of Insurance applying to the Coverage Subpart.

3. **Discovery Period For Loss:** We will pay only for covered loss discovered no later than one (1) year from the end of the policy period.

4. **Duties In the Event of Loss:** After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:

   a. Notify us as soon as possible.

   b. Submit to examination under oath at our request and give us a signed statement of your answers.

   c. Give us a detailed, sworn proof of loss within one hundred twenty (120) days.

   d. Cooperate with us in the investigation and settlement of any claim.

5. **Joint Insured:**

   a. If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this Coverage Part. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

   b. If any Insured or partner or officer of that Insured has knowledge of any information relevant to this Coverage Part, that knowledge is considered knowledge of every Insured.

   c. An "employee" of any Insured is considered to be an "employee" of every Insured.

   d. If this Coverage Part or any of its Coverage Subparts are cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one (1) year from the date of that cancellation or termination.

   e. We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

6. **Legal Action Against Us:** You may not bring any legal action against us involving loss:

   a. Unless you have complied with all the terms of this Coverage Part; and

   b. Until ninety (90) days after you have filed proof of loss with us; and

   c. Unless brought within two (2) years from the date you discover the loss.

7. **Loss Covered Under More Than One Coverage Subpart:** If two or more Coverage Subparts apply to the same loss, we will pay the lesser of:

   a. The actual amount of loss; or

   b. The sum of the Limits of Insurance applicable to those Coverage Subparts.

8. **Loss Sustained During Prior Insurance**

   a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this Coverage Part, provided:

      (1) This Coverage Part became effective at the time of cancellation or termination of the prior insurance; and

      (2) The loss would have been covered by this Coverage Part had it been in effect when the acts or events causing the loss were committed or occurred.

   b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this Coverage Part and is limited to the lesser of the amount recoverable under:

      (1) This Coverage Part as of its effective date; or

      (2) The prior insurance had it remained in effect

9. **Non-Cumulation of Limit of Insurance:**

   Regardless of the number of years this Coverage Part remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

10. **Other Insurance:** This Coverage Part does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this Coverage Part will apply to that part of the loss, other than that falling within any Deductible, not recoverable or recovered under the other insurance or indemnity.

Copyright, Insurance Services Office, Inc., 1983, 1984, 1989, 1990, 1994

However, this Coverage Part will not apply to the amount of loss that is more than the applicable Limits of Insurance shown in the Declarations.

**11. Ownership of Property; Interests Covered:** The property covered under this Coverage Part is limited to property:

a. That you own or hold; or

b. For which you are legally liable.

However, this Coverage Part is for your benefit only. It provides no rights or benefits to any other person or organization.

**12. Policy Period**

a. The Policy Period is shown in the Declarations.

b. Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

**13. Records:** You must keep records of all Covered Property so we can verify the amount of any loss.

**14. Recoveries**

a. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this Coverage Part will be distributed as follows:

(1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible, if any;

(2) Then to us, until we are reimbursed for the settlement made;

(3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible, if any.

b. Recoveries do not include any recovery:

(1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(2) Of original "securities" after duplicates of them have been issued.

**15. Territory:** This insurance covers only acts committed or events occurring within the United States of America (including its territories or possessions), Puerto Rico and Canada.

**16. Valuation - Settlement**

1. Subject to the applicable Limit of Insurance, we will pay for:

a. Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

(1) At face value in the "money" issued by that country; or

(2) In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

b. Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

(1) Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(2) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities." However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

(a) Value of the "securities" at the close of business on the day the loss was discovered; or

(b) Applicable Limit of Insurance.

c. Loss of, or loss from damage to, "property other than money and securities" or loss from damage to the "premises" for not more than the:

(1) Actual cash value of the property on the day the loss was discovered;

(2) Cost of repairing the property or "premises"; or

(3) Cost of replacing the property with property of like kind and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

Copyright, Insurance Services Office, Inc., 1983, 1984, 1989, 1990, 1994

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

2. We may, at our option, pay for loss of, or loss from damage to, property other than "money":

    a. In the "money" of the country in which the loss occurred; or

    b. In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

3. Any property that we pay for or replace becomes our property.

## C. GENERAL DEFINITIONS

1. "Employee" means:

    a. Any natural person:

        (1) While in your service and for thirty (30) days after termination of service; and

        (2) Whom you compensate directly by salary, wages or commissions; and

        (3) Whom you have the right to direct and control while performing services for you; or

    b. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the "premises".

c. Any director or trustee of the insured while performing their fiduciary duties and responsibilities.

d. Any non-compensated natural person, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee".

But, "employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor, or representative of the same general character.

2. "Money" means:

    a. Currency, coins and bank notes in current use and having a face value; and

    b. Travelers checks, register checks and money orders held for sale to the public.

3. "Property other than money and securities" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Crime Coverage Subpart as Property Not Covered.

4. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

Copyright, Insurance Services Office, Inc., 1983, 1984, 1989, 1990, 1994



...Dedicated to Community Service

2554 SWEETWATER SPRINGS BOULEVARD, SPRING VALLEY, CALIFORNIA 91978-2004
TELEPHONE: 670-2222, AREA CODE 619          www.otaywater.gov

June 25, 2007


Mr. Vince Tomkiewicz
Bollinger, Ruberry & Garvey
City Corp. Center, Ste. 2300
500 W. Madison Street
Chicago, IL  60661-2511


Dear Mr. Tomkiewicz:

Please find enclosed invoices for legal service performed in the Pamela Aubrey v. Otay
Water District matter.  The District has paid these invoices (copies of checks also
enclosed) and is seeking reimbursement for payment of the invoices as per the applicable
insurance policy of the District.

Your attention to this matter is appreciated.  Thank you.

Sincerely,

Susan Cruz,
District Secretary


Enclosures

Exhibit 2



JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)   PLAINTIFFS American Protection Insurance | DEFENDANTS An Otay Water District |
|---|---|

08 APR 11 PM 4:04

CLERK, U.S. DIST

(b)  County of Residence of First Listed Plaintiff   Illinois
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

DEPUTY

(c)  Attorney's (Firm Name, Address, and Telephone Number)
Regan Furcolo, Esq., SBN 162956, WALSH & FURCOLO, 750 "B" Street, Suite 2740, San Diego, CA 92101

Attorneys (If Known)

'08 CV 0662 JM POR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C.A. §1332

Brief description of cause:
Declaratory Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE ___   DOCKET NUMBER ___

DATE  4/11/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 149078   AMOUNT $350   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

SEI 4/11/08

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**            Example:            U.S. Civil Statute: 47 USC 553
                                                  Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 149678      - SH

April 11, 2008
16:04:04

Civ Fil Non-Pris
USAO #.: 08CV0662
Judge..: JEFFREY T MILLER
Amount.:
Check#.: BC16091
                              $350.00 CK

Total-> $350.00

FROM: AMERICAN PROTECTION INSURANCE
CO V. OTAY WATER DISTRICT